OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
Northern District of California

CIVIL MINUTES

**Date:** August 5, 2021  **Time:** 2:39 - 3:09 = 30 Minutes  **Judge:** EDWARD M. CHEN

**Case No.:** 21-cv-03341-EMC  **Case Name:** Nextdoor, Inc. v. 420 Taylor Ventures LLC

**Attorneys for Plaintiff:** Morgan Tovey, Dakota Speas
**Attorneys for Defendant:** Lewis Zirogiannis, Heather Lee

**Deputy Clerk:** Angella Meuleman  **Court Reporter:** Katherine Sullivan

PROCEEDINGS HELD BY ZOOM WEBINAR

[25] Motion to Dismiss held.

SUMMARY

Parties stated appearances and proffered argument.

Nextdoor sues on five counts of Fraud and Deceit, Negligent Misrepresentation, Unilateral Mistake, Mutual Mistake, and Unfair Competition/False Advertising. Compl. ¶¶ 66-127.

   A.  Fraud and Negligent Misrepresentation

The Court first addresses the argument that Nextdoor impermissibly used shotgun pleading. A complaint "need not distinguish between defendants that had the exact same role in a fraud." *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018). The Ninth Circuit has held that, where a Plaintiff alleges a wheel conspiracy, wherein "a single member or group (the 'hub')" separately agrees with "two or more other members or groups (the 'spokes')," then any parallel actions of the spokes "can be addressed by collective allegations." *Id.* at 678 (quoting *Conspiracy*, Black's Law Dictionary (10th ed. 2014)). Here, Nextdoor alleges a wheel conspiracy wherein Seven Equity Group "use[d] the LLCs merely as instrumentalities to conduct a single venture, *i.e.*, the leasing of the Premises" and alleges that the LLCs are "nothing more than shell companies." Compl. ¶ 61. Thus, Nextdoor alleges that Seven Equity (the hub) perpetrated a fraud that was implemented in the same way by each of the Defendant LLCs (the spokes). Collective allegations of this kind are permissible because each Defendant is alleged to have played the same role in the fraudulent scheme. *Silingo*, 904 F.3d at 677.

Turning to the merits, state courts have found pre-contractual representations to be actionable

where they are replicated in the lease agreement. *See, e.g.*, *McClain*, 159 Cal. App. 4th at 796 (holding that Plaintiff could plausibly allege that Defendants' precontractual representations regarding the unit's size, which were repeated in the lease agreement, induced her to sign the lease agreement); *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1241-42 (2013) (landlord's representations in letters of intent regarding square footage estimate, which were repeated in the lease agreement, were actionable).

Here, Defendants made false pre-contractual representations about the square footage of the Premises in the Letter of Intent ("LOI"). The LOI, which the parties signed on September 24, 2019, states that the Premises measure 115,766 rentable square feet ("RSF") and that it "*has* been measured in general accordance with BOMA 2017 measurement standards." Ex. B at 1 (emphasis added). It further states that "[b]ackup documentation *is available* upon request." *Id.* (emphasis added). But the Stevenson Report was not in existence at the time the parties signed the LOI. The Stevenson Report has a "Report Date" of October 18, 2019, and an "Approved Date" of October 24, 2019. Compl., Ex. E at 1. Further, the Stevenson Report used a "Market Load Factor" to arbitrarily apply a 25.25% multiplier to arrive at an RSF of 115,766.00. Compl. ¶ 49.b. The Stevenson Report states that this Market Load Factor was "requested at sole discretion of ownership," and market load factors are expressly prohibited by BOMA's Best Practices Guide. *Id.* Thus, the representations in the LOI were inaccurate: there was no backup documentation available upon request, and the Premises had not been measured in accordance with BOMA 2017 standards.

While the lease agreement contains an integration clause and makes no representation regarding the methodology used to calculate the 115,766 RSF, parol evidence is appropriate to prove the alleged fraud. The California Supreme Court has held that the parol evidence rule cannot "be used as a shield to prevent … proof of fraud." *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1182 (2013). *See also Thrifty Payless*, 218 Cal. App. 4th at 1241 (holding that "extrinsic evidence is admissible to establish fraud or negligent misrepresentation in the face of [a] lease's integration clause"). Thus, Nextdoor may use parol evidence to allege that the LOI contained fraudulent misrepresentations which induced it to sign the lease agreement.

The circumstances surrounding Nextdoor's decision to sign the lease agreement (*e.g.*, whether it felt pressured to sign quickly because Defendants were entertaining offers from other prospective tenants, or whether it was unreasonable for a sophisticated actor not to conduct its own measurement of the Premises) are issues for the trier of fact. The Court therefore finds that Nextdoor has plausibly alleged reasonable reliance for purposes of its fraud and negligent misrepresentation claims. The issue of reasonable reliance in this case cannot be decided on the motion to dismiss.

The Court also finds that Nextdoor has plausibly alleged that the measurement methodology was a material term in the lease agreement. The misrepresentation of the square footage of the premises can constitute a material fact. *Cf. Graber v. Mayem*, 426 F.2d 789, 790 (9th Cir. 1970) ("a misrepresentation of the area of real property is a misrepresentation of a material fact, and a vendee who has relied upon the misrepresentation may either rescind the contract or sue for damages"); *Piazzini v. Jessup*, 153 Cal. App. 2d 58, 61, 314 P.2d 196, 198 (1957) ("[a]

misrepresentation of the area of real property is a misrepresentation of a material fact, and if relied upon will warrant rescission or damages"). The instant case is no different: the Complaint alleges that the square footage of the Premises was a material term because Nextdoor expected its workforce to triple over the course of the following 7 to 10 years, and it needed an office space that could accommodate approximately 900 employees. Compl. ¶ 20. Defendants contend that Nextdoor waived its right to dispute the measurement methodology used in the Stevenson Report, because it had access to the report when it signed the lease amendment in May 2020. However, the Court finds that the issue of waiver and materiality (as evidenced by Nextdoor's failure to raise the square footage question during the amendment) is a question for the trier of fact.

The Court also finds that Nextdoor has plausibly alleged the remaining element needed for fraud: scienter. Rule 9(b) provides that, in alleging fraud, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Here, Nextdoor alleges that Defendants "knew that their application of the 'market load factor' was improper" and that Defendants instructed Stevenson Systems to use the market load factor and arbitrarily inflate the square footage. Compl. ¶ 49.b. Finally, Nextdoor has plausibly alleged damages, which is needed for both a fraud and negligent misrepresentation claim. It alleges that, as a result of the artificial inflation of the RSF, Nextdoor's rent was raised from $83 per rentable square foot to approximately $115 per rentable square foot. *Id.* ¶ 50.

Accordingly, the Court **DENIES** Defendants' motion to dismiss the fraud and negligent misrepresentation causes of action.

   B. Unilateral Mistake

The Court finds that Nextdoor has plausibly alleged unilateral mistake.

California Civil Code § 1577 provides as follows: "[m]istake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in … [a]n unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or … [b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Cal. Civ. Code § 1577. The elements of unilateral mistake of fact are: (1) a party made a mistake regarding a basic assumption upon which that party made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to that party; (3) that party does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." *Donovan v. Rrl Corp.*, 26 Cal. 4th 261, 282 (2001).

Here, Nextdoor made a mistake regarding a basic assumption upon which it entered into the Lease Agreement: the square footage of the premises, which was supposed to seat 915 employees to accommodate its growing workforce. Compl. ¶ 96.

Defendants argue that the third element is not met because Nextdoor bore the risk of the mistake as a sophisticated actor with a large and well-resourced brokerage firm, Jones Lang LaSalle, Inc. Reply at 7 n.7. However, even if Nextdoor was negligent in signing the Lease Agreement

without hiring its own contractor to measure the premises, the California Supreme Court has held that ordinary negligence does not constitute neglect of a legal duty and therefore does not bar a claim of unilateral mistake under Civil Code § 1577. *Donovan v. Rrl Corp.*, 26 Cal. 4th 261, 283 (2001). With respect to unconscionability, the fourth and final element, Nextdoor has plausibly alleged that this mistake led to an unusually harsh and one-sided result: instead of paying **$83 per rentable square foot**, as promised in the LOI, Nextdoor paid **$115 per rentable square foot**, an increase of $32 per square foot. *See* LOI, Ex. B at 2. Even if Nextdoor was not the weaker party to the contract and had equal bargaining power with Defendants, this still arguably constitutes a harsh surprise and a one-sided result sufficient to plausibly allege unconscionability. *Cf. Donovan*, 26 Cal. 4th at 292 ("even though defendant is not the weaker party to the contract and its mistake did not result from unequal bargaining power, defendant was surprised by the mistake, and in these circumstances overly harsh or one-sided results are sufficient to establish unconscionability entitling defendant to rescission"). In sum, Nextdoor has plausibly alleged unilateral mistake.

The Court **DENIES** Defendants' motion to dismiss the unilateral mistake cause of action.

   C.  Mutual Mistake

California Civil Code § 1640 provides that "[w]hen, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." Cal. Civ. Code § 1640. In the case of mutual mistake, "the contract may be reformed to conform to the intent of the parties." *Thrifty Payless*, 218 Cal. App. 4th at 1243. Ordinary negligence does not bar a claim for mutual mistake; rather, "[o]nly gross negligence or 'preposterous or irrational' conduct will [bar] mutual mistake." *Id.* (quoting *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 529 (2002)). The mistake must involve a "a material mistake of law or fact." *Merced Cty. Mut. Fire Ins. Co. v. California*, 233 Cal. App. 3d 765, 771 (1991).

The Complaint alleges that Defendants were fully aware of the rentable square footage of the premises. *See* Compl. ¶ 50 ("[t]he Landlord knew its representations were false, and that there was no colorable basis for the square footage representations it repeatedly made to Nextdoor and others"). The claim for fraud is therefore inconsistent with the claim for mutual mistake. However, Rule 8 provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3) (emphasis added). *Cf. PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007) ("we allow pleadings in the alternative--even if the alternatives are mutually exclusive").

Here, the factual allegations in the complaint are consistent in alleging that Defendants had knowledge of their misrepresentations regarding the square footage of the Premises, and the claim for mutual mistake is explicitly pled in the alternative. *See* Compl. ¶ 109 ("[i]f the Landlord did not know about its misstatements regarding the square footage of the Premises, *then in the alternative* … the Landlord mistakenly came to believe that the Premises consisted of 115,766 rentable square feet") (emphasis added).

Further, for the reasons discussed *supra*, the mistake involved a material question of fact (the

rentable square footage of the premises). Nextdoor has plausibly and permissibly alleged mutual mistake in the alternative, as permitted by Rule 8.

The Court **DENIES** Defendants' motion to dismiss the mutual mistake cause of action.

### D. Unfair Competition/False Advertising

The false advertising claim relates to the marketing brochure regarding the Premises which was distributed to Nextdoor by CBRE on August 13, 2019. Compl. ¶ 23. Nextdoor brings this claim under the California Business & Professions Code, which imposes liability on those who disseminate statements to the public that are "untrue or misleading" or which are "known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

Unlike the LOI, the marketing brochure does not state that the 115,766 RSF was calculated using any particular methodology. Further, even though the brochure states that the Premises can seat 915 people, it contains an explicit disclaimer that these estimates are for "example only" and that Defendants make no representations or warranties concerning the size of the space. Compl., Ex. A at 11. Nextdoor has failed to explain how these statements in the brochure - which make no reference to any particular methodology for measuring the RSF and which are qualified by a disclaimer - can be deemed sufficiently untrue or misleading so as to state a claim.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss the unfair competition/false advertising cause of action. This dismissal is **with prejudice** because there are no facts which Nextdoor can allege to state a plausible claim.

### E. Alter Ego Theory

Nextdoor seeks to hold Seven Equity Group liable as an alter ego of the Defendant LLCs. Compl. ¶¶ 52-65. The Ninth Circuit has indicated that there is an alter ego relationship for jurisdictional purposes where "there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and … that failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotation omitted), *rev'd on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017). California courts have developed a similar approach to discerning the existence of an alter ego relationship. *See Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1038 (9th Cir. 2010) ("California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice'") (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977)).

Factors suggesting a unity of interest or ownership include "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop v.*

*Superior Court*, 15 Cal. App. 3d 405, 411, 93 Cal. Rptr. 338, 341 (1971).

Nextdoor has failed to make the requisite showing for alter ego liability.  Nextdoor only provides facts showing Mr. Falack's control over 420 Taylor Ventures LLC, not the other named LLC defendants.  Mr. Falack is a member of both 420 Taylor Ventures, LLC and Seven Equity, but that is as far as the overlap in ownership goes.  *See* Reply at 12.  There are 16 other owners of 420 Taylor Ventures LLC (none of whom has any interest in Seven Equity), and Mr. Falack has no ownership interest in any of the other Leasing Defendants.  *Id.*  Even if Mr. Falack did have such an ownership interest in the remaining Leasing Defendants, the Ninth Circuit has held that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control" for an alter ego relationship.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).  Thus, Nextdoor has not alleged unity of ownership.

In sum, Nextdoor has not shown that the named LLC Defendants are the alter egos of Seven Equity Group.  But alter ego is merely one theory of liability alleged by Nextdoor.  Nextdoor also alleges that Seven Equity *independently and directly* played a crucial role in the fraud by directing Stevenson to apply an arbitrary market load factor in the Stevenson Report.  *See* Compl. ¶¶ 42, 49.b. (stating that Seven Equity "approved" the Stevenson Report and directed Stevenson to apply an arbitrary market load factor).

The Court **grants** Nextdoor **leave to amend** to allege more specifically that Seven Equity had a direct and independent role in perpetrating the fraud alleged in the complaint.

ADR:

Parties have begun settlement negotiations and will discuss further in detail at Initial Case Management Conference previously set with the Court on 8/24/2021.  The Court urged the parties to settle the case as the risks of litigation are obvious to both sides.