LEWIS ZIROGIANNIS, CA Bar No. 321955
  lzirogiannis@foley.com
JAIME DORENBAUM, CA Bar No. 289555
  jdorenbaum@foley.com
JASON Y. WU, CA Bar No. 313368
  jwu@foley.com
HEATHER A. LEE (*admitted pro hac vice*)
  hlee@foley.com
FOLEY & LARDNER LLP
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507

*Attorneys for Defendants 420 Taylor Ventures, LLC,*
*NT 420 Taylor Owner LLC, NH 420 Taylor Owner LLC,*
*420 Taylor Holdings Owner LLC, and Seven Equity Group, LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTDOOR, INC., a Delaware Corporation,<br><br>PLAINTIFF,<br><br>v.<br><br>420 TAYLOR VENTURES, LLC, a Delaware Limited Liability Company, NT 420 TAYLOR OWNER LLC, a Delaware Limited Liability Company, NH 420 TAYLOR OWNER LLC, a Delaware Limited Liability Company, 420 TAYLOR HOLDINGS OWNER LLC, a Delaware Limited Liability Company, SEVEN EQUITY GROUP, LLC, and DOES 1–50,<br><br>DEFENDANTS. | CASE NO. 3:21-CV-03341-EMC<br><br>**DEFENDANT SEVEN EQUITY GROUP, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Removed from the Superior Court of the State of California for the County of San Francisco, Case No. CGC-21-590369<br><br>Complaint Filed: March 11, 2021<br>Notice of Removal Filed: May 5, 2021<br><br>Date: February 10, 2022<br>Time: 1:30 p.m.<br>Courtroom 5 – 17th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 10, 2022 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 5 – 17th Floor of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Seven Equity Group, LLC ("Seven Equity") will, and hereby does, move this Court for an order (a) dismissing with prejudice the Second Amended Complaint filed by Plaintiff Nextdoor, Inc. (the "Second Amended Complaint"), and each and every cause of action alleged therein, insofar as they are alleged against Seven Equity, and (b) striking certain allegations contained therein, namely, paragraphs 35; 36; 79-95; the last sentence of each of paragraphs 100, 104, 115, 118, 128; and 125, subparagraph (5).

This motion is made pursuant to Rules 9(b) and 12(b)(6) and (f) of the Federal Rules of Civil Procedure, on the grounds that the Second Amended Complaint (i) fails sufficiently to state any plausible claim for relief against Seven Equity, and therefore should be dismissed with prejudice in its entirety insofar as it purports to state any such claim; and (ii) contains a restated alter ego theory of liability with respect to Seven Equity, and new allegations, both well beyond the scope of this Court's limited leave to amend, which should be stricken. This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and records on file in this action, and such additional authority and argument as may be presented in reply and at the hearing on this Motion.

1   DATE: JANUARY 11, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOLEY & LARDNER LLP**
LEWIS ZIROGIANNIS
JAIME DORENBAUM
JASON Y. WU
HEATHER A. LEE


By: */s/ Lewis Zirogiannis*
　　LEWIS ZIROGIANNIS
　　Lewis Zirogiannis (Bar No. 321955)
　　lzirogiannis@foley.com
　　Jaime Dorenbaum (Bar No. 289555)
　　jdorenbaum@foley.com
　　Jason Wu (Bar No. 313368)
　　jwu@foley.com
　　Heather A. Lee (*admitted pro hac vice*)
　　hlee@foley.com
　　555 California Street, Suite 1700
　　San Francisco, California 94104-1531
　　Telephone: (415) 434-4484
　　Facsimile: (415) 434-4507

*Attorneys for Defendants 420 Taylor Ventures, LLC,*
*NT 420 Taylor Owner LLC, NH 420 Taylor Owner LLC,*
*420 Taylor Holdings Owner LLC, and Seven Equity*
*Group, LLC*

4864-5480-9608.5

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED .....................................................................4

III.    FACTUAL BACKGROUND ..................................................................................................4

IV.     ARGUMENT ..........................................................................................................................7

      A.      Legal Standard ...........................................................................................................7

      B.      Plaintiff Does Not and Cannot Plead with Particularity Facts Evidencing Seven Equity's Direct Involvement in the Conduct Described in the SAC.................................................8

      C.      Plaintiff's Attempt To Re-Allege Its Alter Ego Theory of Liability against Seven Equity, and Its Insertion of New Allegations Unrelated to Its Attempted "Refinement" of Its Claims against Seven Equity, Exceed the Permitted Scope of Amendment. ...................11

      D.      Even If the Second Amended Complaint Did Not Exceed the Permissible Scope of Amendment, Plaintiff's Alter Ego Theory Should be Dismissed Because Plaintiff Fails Plausibly To Allege Seven Equity Is an Alter Ego of the Leasing Defendants.................12

            i.      Plaintiff Does Not Plead Unity of Ownership or Interest. ....................................13

            ii.     Plaintiff Does Not Plead Facts Sufficient To Show that Denial of Alter Ego Liability Would Lead to an Inequitable Result.......................................................17

V.      CONCLUSION .....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amaro v. Wolf Firm*,
No. LACV1507978JAKEX, 2016 WL 7444849 (C.D. Cal. Feb. 29, 2016) ...........................9

*Bautista-Perez v. Juul Labs, Inc.*,
No. 20-CV-01613-HSG, 2020 WL 7428320 (N.D. Cal. Dec. 18, 2020) ...............................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................7

*Benson v. JPMorgan Chase Bank, N.A.*,
673 F.3d 1207 (9th Cir. 2012) .........................................................................................7

*Calif. Dep't of Toxic Substances Control v. NL Indus.*,
No. 220CV11293SVWJPR, 2021 WL 5933140 (C.D. Cal. Oct. 13, 2021) ..........................15

*In re Calif. Gas. Spot Mkt. Antitrust Litig.*,
No. 20-CV-03131-JSC, 2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) ...............................14

*Calvert v. Huckins*,
875 F. Supp. 674 (E.D. Cal. 1995).......................................................................................13

*Chandler v. Brennan*,
No. CV-20-00924-PHX-DWL, 2021 WL 4503423 (D. Ariz. Oct. 1, 2021) ........................11

*Cotterill v. City & Cty. of S.F.*,
No. C 08-02295 JSW, 2009 WL 1324064 (N.D. Cal. May 8, 2009).......................................9

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851
F.3d 1015 (9th Cir. 2017) ...................................................................................................15

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003).............................................................................................................12

*GEC US 1 LLC v. Frontier Renewables, LLC*,
No. 16-CV-1276 YGR, 2016 WL 4677585 (N.D. Cal. Sept. 7, 2016)...................9, 10, 13, 15

*Gerritsen v. Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ........................................................................11, 13

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ....................................................................12, 13, 15

4864-5480-9608.5

*Gilmore v. Wells Fargo Bank N.A.*,
  75 F. Supp. 3d 1255 (N.D. Cal. 2014) .................................................................................7

*Greenbaum v. KC Jewelry, Inc.*,
  No. 216CV06845SVWJPR, 2017 WL 5496224 (C.D. Cal. Jan. 25, 2017) ...............13, 16, 17

*Iconlab, Inc. v. Bausch Health Cos., Inc.*,
  828 F. App'x 363 (9th Cir. 2020) ......................................................................................15

*Kanji v. Bank of Am., N.A.*,
  No. CV 20-3820-RSWL-SK, 2020 WL 8175548 (C.D. Cal. Aug. 25, 2020) ..........................9

*Kingdom 5–KR–41, Ltd. v. Star Cruises PLC*,
  No. 01 Civ. 2946(AGS), 2002 WL 432390 (S.D.N.Y. Mar. 20, 2002)...................................12

*Kramer Motors, Inc. v. Brit. Leyland, Ltd.*,
  628 F.2d 1175 (9th Cir. 1980) ...........................................................................................15

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) .............................................................................................14

*Naghavi v. Belter Health Measurement & Analysis Tech. Co.*,
  No. 20-CV-01723-H-KSC, 2021 WL 461725 (S.D. Cal. Feb. 9, 2021)................................8, 9

*Neilson v. Union Bank of Calif., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..............................................................................17

*Papasan v. Allain*,
  478 U.S. 265 (1986).............................................................................................................7

*PB Farradyne, Inc. v. Peterson*,
  No. C 05-3447 SI, 2006 WL 2578273 (N.D. Cal. Sept. 6, 2006)...........................................11

*Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*,
  No. 16-CV-00669-YGR, 2017 WL 201703 (N.D. Cal. Jan. 18, 2017) .....................................9

*Puri v. Khalsa*,
  674 F. App'x 679 (9th Cir. 2017) .........................................................................................7

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................................................13

*Sawyer v. Bill Me Later, Inc.*,
  No. CV1004461SJOJCGX, 2010 WL 11492736 (C.D. Cal. Dec. 14, 2010) ........................17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)7, 8, 14, 15

TABLE OF AUTHORITIES
CASE NO. 3:21-CV-03341-EMC

4864-5480-9608.5

*In re Stac Elec. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ............................................................................7

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..........................................................................7

*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*,
   No. 5:20-CV-04184-EJD, 2020 WL 6290377 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co., Ltd*, No. 20-17237, 2021 WL 3783096 (9th Cir. Aug. 26, 2021) .14, 16

**State Cases**

*Phillips v. Cooper Lab'ys*,
   215 Cal. App. 3d 1648 (1989) ..........................................................................14

**Rules**

Fed. R. Civ. Proc. 12(f) ..........................................................................................7, 11

Federal Rule of Civil Procedure 9(b) ......................................................................7, 14

Federal Rule of Civil Procedure 12(b)(6) ..................................................................7

Rule 11 ..................................................................................................................2, 11

**Other Authorities**

*Lifecare Int'l, Inc. v. St. Jude Med., Inc.*,
   No. CV-98-2263CAS, 1998 WL 469868, at *2 (C.D. Cal. June 1, 1998) .....................14, 16

4864-5480-9608.5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

Relying principally on SEC filings that (1) were available to Plaintiff Nextdoor, Inc. ("Plaintiff") over one year before it filed its initial Complaint; and (2) ***were neither authored nor filed by defendant Seven Equity Group, LLC*** ("Seven Equity"), Plaintiff has filed yet another amended pleading – the Second Amended Complaint (the "SAC") – in which Plaintiff attempts to drag Seven Equity, an uninvolved entity, into this lawsuit. Notwithstanding Plaintiff's now having the benefit of substantial document discovery, including the operating and limited liability company agreements that Plaintiff represented to the Court would – but in fact did not – support its baseless allegations, Plaintiff cannot point to a single document in which ***Seven Equity itself***, not some unrelated and uninformed non-party, asserted that Seven Equity was acting in relation to the lease that is the indisputable subject of this action (the "Lease"). In sum, the SAC still fails to allege – because Plaintiff cannot allege – any factual basis for Plaintiff's now ***fifth***[2] attempt to entangle Seven Equity in this litigation. Accordingly, Plaintiff must, for the third time, request that this Court dismiss Plaintiff's purported claims against Seven Equity.

This litigation involves Plaintiff's substantially-after-the-fact March 2021 challenge to the November 2019 Lease, which it entered into, as tenant, with defendants 420 Taylor Ventures, LLC, NT 420 Taylor Owner LLC, NH 420 Taylor Owner LLC, and 420 Taylor Holdings Owner LLC ("Leasing Defendants") as (together), landlord, for the Premises, consisting of the building located at 420 Taylor Street, San Francisco, California 94102. Plaintiff's needs for office space changed a few months after it entered into the Lease due to the emergence of the COVID-19 pandemic, and as a form of self-help, it

---

[1] Plaintiff obtained leave to files its Second Amended Complaint in the first instance by making a number of unfounded misrepresentations during the prior oral argument, including, but not limited to, that Seven Equity supposedly was a guarantor of the loan on the Leased property (the "Premises") (ECF No. 101, transcript of December 15, 2021 hearing, Tr. 4:6-12, 20:10-12, 29:21-23) and that Ray Falack (a member of both Seven Equity and Defendant 420 Taylor Ventures, LLC ("420 Taylor Ventures")) corrected the name of the Premises' owner with Stevenson Systems ("Stevenson"), from Seven Equity to 420 Taylor Ventures, only ***after*** the lawsuit was filed (*id.* 17:11-17). None of these statements made by Plaintiff's counsel was true. Seven Equity's motion to dismiss should therefore be granted on these independent grounds.

[2] Plaintiff's previous efforts included its Complaint, Motion for Clarification, First Amended Complaint, and Joint Letter Brief in support of the First Amended Complaint. ECF Nos. 3-1, 56, 70, 95.

1

instituted this action in an effort to escape from the Lease terms. Not content with suing Leasing Defendants, Plaintiff has spent significant time and effort in desperate pursuit of Seven Equity as well.

Plaintiff's initial attempt to embroil Seven Equity in this dispute was on the theory that Leasing Defendants supposedly are alter egos of Seven Equity. This claim was unequivocally rejected by this Court: on August 5, 2021, this Court dismissed the Complaint insofar as it purported to plead a claim against Seven Equity, on the ground that Plaintiff "fail[ed] to make the requisite showing of alter ego liability." ECF No. 52 at 6. The Court granted Plaintiff leave to amend its claim as to Seven Equity, but only if it could "allege more specifically that Seven Equity had a direct and independent role" in the conduct alleged in the Complaint. *Id.* (emphasis omitted).

In its First Amended Complaint (ECF No. 70), Plaintiff not only replead its failed alter ego claim in defiance of the Court's clear directive limiting the scope of permissible amendment, but also included false allegations, wholly belied by the extensive discovery produced in this case, regarding Seven Equity's supposed involvement with non-parties that performed services related to the Premises. Recognizing the spurious nature of these allegations, at the hearing on Seven Equity's Motion to Dismiss the First Amended Complaint, the Court advised it would consider giving Plaintiff a chance to refine the First Amended Complaint's allegations in light of Plaintiff, and Plaintiff's counsel's, obligations under Rule 11 of the Federal Rules of Civil Procedure ("FRCP"). ECF No. 101, Tr. 21:15-25; ECF No. 93. At the Court's request, Seven Equity and Plaintiff then submitted a joint letter brief regarding this issue (ECF No. 95), and the Court permitted Plaintiff to refine any incorrect or unsupported allegations via a second amended complaint. ECF No. 96. ***The Court did not grant Plaintiff blanket leave to amend its complaint to assert new and different allegations***, but rather, clearly advised Plaintiff it could "refine" its First Amended Complaint to ensure it did not run afoul of its Rule 11 obligations. ECF No. 101, Tr. 37:19-23 ("I would like to see a complaint amended on those points, ***not to change stuff,*** but, I mean, [for] clarification on the points that we have raised, about who signed what on whose behalf, and all that sort of stuff.") (emphasis added).

The SAC, however, again plainly ignores this Court's clear directives. It again revisits Plaintiff's baseless and already-dismissed alter ego theory of liability and further includes impermissible new allegations that have nothing to do with Seven Equity or the issues raised at the hearing on Seven Equity's

Motion to Dismiss. SAC ¶¶ 35; 36; the last sentences of 100, 104, 115, 118, 128; and 125, subparagraph (5). Plaintiff's recycled alter ego claim defies the Court's Order specifying the limited scope of permitted amendment and should be dismissed and stricken with prejudice as a clear violation of that Order – and, in any event, it fails as a matter of law. Likewise, Plaintiff's new allegations in the SAC should be stricken in their totality, as another trespass beyond the scope of permissible amendment clearly delineated by this Court.[3]

Further, the SAC should be dismissed in its entirety as to Seven Equity, as Plaintiff's theory of "direct and independent" liability fails as a matter of law. This theory utterly disregards the uncontested facts that Seven Equity is not a party to the Lease, is not an owner of the Premises, and is not otherwise involved in any transaction with Plaintiff, and that, in negotiating the Lease, ***Plaintiff never believed it was contracting with Seven Equity***. Simply put, Plaintiff cannot show – let alone with the required particularity, and notwithstanding that Plaintiff already has received substantial discovery from Defendants[4] – that Seven Equity had any involvement in this landlord-tenant dispute. Thus, even the most cursory examination of the SAC's allegations (and annexed exhibits) exposes those allegations as wholly insufficient, as a matter of law, to support a finding of Seven Equity's direct involvement. Plaintiff's re-try at littering the SAC with empty references to Seven Equity and Falack (a member of both Seven Equity and Leasing Defendant 420 Taylor Ventures), and pointing to documents prepared by strangers to both the Defendants' corporate structures and the Lease, cannot change the critical fact that Seven Equity simply has nothing to do with this dispute.

Accordingly, even assuming for the purpose of this motion the truth of Plaintiff's inaccurate

---

[3] Striking these allegations is particularly justified here, where the SAC reflects Plaintiff's persistent playing fast and loose with this Court's Orders. This is the third time Plaintiff has ignored clear directives of the Court: first, in filing its baseless motion for clarification as to the Court's dismissal of Seven Equity from the original complaint (ECF No. 56); second, in re-alleging alter-ego claims in its First Amended Complaint despite the Court's clear directive to amend to allege direct involvement; and third, in the SAC, by regurgitating the alter-ego theory and raising additional allegations outside the scope of amendment.

[4] Although this motion to dismiss addresses only Plaintiff's insufficient (and false) amended allegations as to Seven Equity, as discussed at the hearing on Seven Equity's motion to dismiss, Plaintiff has been provided with substantial document discovery in this case – evidence that not only fails to support Plaintiff's fraud claim as to all Defendants, but also contradicts the SAC's allegations concerning the supposed fraud of which Defendants are accused.

4864-5480-9608.5

allegations, the SAC must be dismissed as to Seven Equity, and Seven Equity should be dismissed from this lawsuit – with prejudice.

## II.   STATEMENT OF ISSUES TO BE DECIDED[5]

1.   Whether Plaintiff's SAC fails to plead that Seven Equity participated directly and independently in the allegedly wrongful conduct.

2.   Whether Plaintiff's SAC improperly exceeds the Court-prescribed limited scope of amendment by re-alleging that Seven Equity is liable as a purported alter ego of Leasing Defendants and by adding allegations that have nothing to do with Seven Equity's purported involvement in the dispute.

3.   If the Plaintiff did not exceed the permissible scope of amendment, whether the SAC fails to plead that Seven Equity is an alter ego of Leasing Defendants.

## III.   FACTUAL BACKGROUND[6]

The facts giving rise to this dispute are set forth in detail in Defendants' motions to dismiss the original Complaint and the First Amended Complaint (ECF Nos. 25, 75), which are incorporated by reference, and therefore not restated, herein.

The SAC attempts to assert claims for fraud and deceit, negligent misrepresentation, and unilateral mistake – not just against Leasing Defendants, but also against Seven Equity. However, the SAC does not, because it cannot, allege that Seven Equity owns the Premises, is a party to the Lease, made representations to Plaintiff, or engaged in negotiations or transactions with Plaintiff.

---

[5] In light of the Court's Order (ECF No. 52) on Defendants' first Motion to Dismiss (ECF No. 25), Leasing Defendants and Seven Equity are not moving to dismiss the SAC on the grounds of Plaintiff's failure to plead the requisite elements of the claims alleged therein. Rather, Seven Equity brings this Motion on the limited grounds that the SAC (1) fails to plead facts sufficient to show that Seven Equity was involved in the conduct described in the SAC, either as a direct participant in the allegedly wrongful conduct or as an alter ego of Leasing Defendants; and (2) contains allegations that exceed the permissible scope of amendment and that therefore should be stricken. Defendants reserve all rights to contest the adequacy of Plaintiff's claims at the procedurally proper time. By way of example only, of particular impropriety are Plaintiff's misleading allegations regarding the applicable BOMA standards, as the BOMA 2017 standard that Plaintiff champions is applicable to multi-tenant, *not single-tenant*, buildings. Under the Lease, Plaintiff has leased the Premises in their entirety.

[6] At the motion to dismiss stage, Seven Equity is required to assume the truth of the SAC's well-pled factual allegations. Seven Equity, however, disputes Plaintiff's recitation of the so-called "facts," and as noted in n.8, reserves all rights to challenge them should the claims against it proceed.

1   Plaintiff attempts to create the impression that its claims against Seven Equity have substance
2   simply by sprinkling its name, and its managing principal's name, throughout the SAC. Plaintiff tries to
3   justify these references by perfunctorily alleging that Seven Equity, via Falack, "indirectly controlled"
4   Leasing Defendants. SAC ¶ 73. For the first time in the SAC, Plaintiff attempts to support this allegation
5   by relying on Deutsche Mortgage & Asset Receiving Company's ("Deutsche") SEC filings from July and
6   August 2020 – nearly a year after Plaintiff signed the Lease and almost a year before the Complaint was
7   filed – that list Seven Equity as the "borrower's sponsor." These documents, filed and prepared by
8   Deutsche, not Seven Equity, are hundreds of pages long, and relate to dozens of properties completely
9   unrelated to the Premises, or Defendants, for which Deutsche holds loans.[7]

10   Plaintiff also again points to the fact that Falack, the managing principal of Seven Equity, is among
11   the many owners of Leasing Defendant 420 Taylor Ventures, and perfunctorily asserts Seven Equity and
12   a wholly unrelated entity that is not a party to this action (Nakash Holdings, Inc.) "ultimately controlled"
13   Leasing Defendants and were "ultimately responsible for" Leasing Defendants entering into the Lease.
14   SAC ¶¶ 1, 25. These conclusory allegations are demonstrably false. As Plaintiff well knows, because it is
15   set out clearly in Defendants' Notice of Removal (ECF No. 1), Falack has no interest in any Leasing
16   Defendant other than 420 Taylor Ventures, and Leasing Defendants have 36 *other* owners, none of whom
17   has any ownership interest in Seven Equity.

18   Similarly, the SAC erroneously alleges that Falack, acting on behalf of Seven Equity, contracted
19   with Stevenson to measure the Premises. Plaintiff makes this assertion only because Stevenson mistakenly
20   addressed its initial proposal to Seven Equity. SAC ¶ 30. But Plaintiff acknowledges, as it must, that by
21   June 18, 2019, Falack had corrected Stevenson's error and instructed it to submit invoices to 420 Taylor
22   Ventures, not to Seven Equity. *Id.* ¶ 31, n.4. Flying in the face of this express acknowledgement, Plaintiff
23   then falsely alleges that "[t]hroughout *October 2019*, Falack continued to demand changes to Stevenson's
24   reports *on behalf of Seven Equity* . . . ." *Id.* ¶ 40 (emphasis added); *see also id.* ¶ 38 (alleging Falack was
25   conversing with Stevenson on Seven Equity's behalf on June 24, 2019). The allegation that, in October
26   2019, Falack was corresponding with Stevenson on behalf of Seven Equity is belied by Plaintiff's own

27
28   _____
   [7] Exhibit A is available in full here:
   https://www.sec.gov/Archives/edgar/data/1013454/000153949720000963/n2255-x3_ts.htm

DEFENDANT SEVEN EQUITY GROUP, LLC'S MOTION TO DISMISS AND STRIKE
CASE NO. 3:21-CV-03341-EMC

4864-5480-9608.5

contrary allegation and obviously is false.

Plaintiff's remaining allegations as to Seven Equity are equally baseless. To manufacture its claims, Plaintiff relies on (i) invoices from Perkins+Will, a geotechnical engineering report by another non-party, and a proposal from CBRE that were mistakenly addressed, by these non-parties, to Seven Equity; and (ii) the listing of Seven Equity as an additional insured but, critically, not the primary policyholder, on an insurance policy relating to the Premises. *Id.* ¶¶ 82, 84, 85. But Plaintiff ignores that the architectural drawings from Perkins+Will  list 420 Taylor Ventures, ***not Seven Equity***, as owner of the Premises (*see* ECF No. 95), as do other documents submitted with 420 Taylor Ventures' Conditional Use Authorization and Office Allocation Application, which curiously was omitted from Plaintiff's book of SAC exhibits, despite being referenced throughout same. *E.g.* SAC, ¶¶ 28, 66, 82, 89. Likewise, other documents in Plaintiff's possession show that it was 420 Taylor Ventures, ***not Seven Equity***, that contracted with, and was invoiced by, JLL (***Plaintiff's*** broker), Stevenson, CBRE, and other non-parties.[8] In any event, a non-party's mislabeling of an invoice is insufficient to show Seven Equity was involved in the fraud alleged in the SAC. Indeed, Plaintiff points to no document showing any act or representation ***by Seven Equity*** that indicates it took ***any*** action as to the Lease, which is what is at issue in this action.

Finally, in a legally flawed attempt to support its barred alter ego theory, Plaintiff insists that Leasing Defendants are undercapitalized. *Id.* ¶ 91. As explained below, this allegation is legally irrelevant. It also is false as demonstrated by Plaintiff's own allegations. Specifically, Plaintiff alleges the Premises is valued at $143.5 million with a 61.3% loan-to-value ratio, meaning that Leasing Defendants have accrued ***over $55 million in equity in the Premises*** – nearly ***three times*** Plaintiff's $20 million demand (*e.g., id.* ¶¶ 6, 137) – that is available to Plaintiff in the unlikely event it obtains a judgment in its favor. *Id.* ¶ 76; *see also* ECF No. 101, Tr. 28:3-9 (acknowledging that equity in the Premises is sufficient capitalization).

In short, the SAC's allegations as to Seven Equity remain spurious and still rest on little more than

---

[8] Further obfuscating the SAC, Plaintiff contends that Seven Equity controls SEG Taylor, LLC because Deutsche lists that non-party as an "affiliate" of Seven Equity. This allegation has nothing to do with whether Seven Equity took any action that could render it liable to Plaintiff, nor with whether it is an alter ego of Leasing Defendants, nor with the crux of this case: Plaintiff's efforts to avoid its contractual obligations in light of changed working and market conditions.

DEFENDANT SEVEN EQUITY GROUP, LLC'S MOTION TO DISMISS AND STRIKE
CASE NO. 3:21-CV-03341-EMC

the fact that Falack is a member of both Seven Equity and 420 Taylor Ventures. These conclusory allegations are insufficient to survive a motion to dismiss, especially because the SAC alleges fraud, which must be pled with particularity.

## IV.   ARGUMENT

### A.   Legal Standard

In deciding whether a complaint should be dismissed pursuant to FRCP 12(b)(6), the Court is not required to accept as true allegations that are "merely conclusory, unreasonable deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *accord Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1209 (9th Cir. 2012) (affirming dismissal of plaintiff's complaint for failure to "adequately plead a claim based on [defendant]'s independent conduct"). Likewise, "the court need not . . . accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell*, 266 F.3d at 988.

Instead, to survive a motion to dismiss, the complaint's well-pled factual allegations must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and a defendant's supposed involvement in the same, "will not do." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Additionally, pursuant to FRCP 9(b), where, as here, a claim sounds in fraud, the allegations supporting the claim must be pled with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Allegations of fraud, and of negligent misrepresentation, which sounds in fraud, "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.*; *see also Puri v. Khalsa*, 674 F. App'x 679, 689 (9th Cir. 2017) (applying heightened pleading standard of Rule 9(b) to claim for negligent misrepresentation); *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1269 (N.D. Cal. 2014) (negligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b)). Rule 9(b) thereby "protect[s] [defendants] from the harm that comes from being subject to fraud charges, and . . . prohibit[s] plaintiffs from unilaterally imposing upon the court, the

parties and society enormous social and economic costs absent some factual basis." *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotations and citations omitted).

Further, under FRCP 12(f), the Court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."

**B.      Plaintiff Does Not and Cannot Plead with Particularity Facts Evidencing Seven Equity's Direct Involvement in the Conduct Described in the SAC.**

In the SAC, Plaintiff again purports to state claims against Seven Equity as a supposed direct participant in the alleged misconduct. SAC ¶ 79. Plaintiff entirely misses the mark, as none of the allegations in the SAC even attempts to show that Seven Equity was involved in negotiating the Lease with Plaintiff, which negotiations and Lease are at the core of Plaintiff's claims. This failure alone is sufficient to warrant dismissal of Seven Equity, regardless of Plaintiff's remaining allegations, which do nothing more than attempt to tie Seven Equity to loans and other tangential documents related to the Premises.

Even putting aside this failure, Plaintiff's only basis for alleging *any* "direct" involvement of Seven Equity is the erroneous assumption that Falack at all times acted "in his capacity as the Managing Principal of Seven Equity". *Id.* ¶ 2. Plaintiff incorrectly hypothecates that, because Falack's email domain is @sevenequity.com (*id.* ¶ 30, n.3, 31, n.4, 38), his purported conduct must have been executed in his capacity *as a member of Seven Equity* rather than in his capacity *as a member of Leasing Defendant 420 Taylor Ventures*. *Id.* ¶ 25, n.2; *see also* ¶¶ 22, 27, 28, 30, n.3, 31, n.4, 32, 35, 36, 37, 38, 39, 40, 49, 56 (misleadingly omitting from a quotation of the Lease's notice provision that notices to Leasing Defendants must be sent *both* to Leasing Defendants' real estate counsel and *care of* Seven Equity). Plaintiff holds steadfast to this fallacious theory even when the SAC's own allegations show its falsity. *E.g. id.* ¶¶ 31, n.4 (acknowledging that Falack instructed Stevenson to submit invoices to 420 Taylor Ventures, *not to Seven Equity*); *id.* ¶¶ 38, 40 (falsely alleging that Falack corresponded with Stevenson on behalf of Seven Equity). Because this assumption is, at best, unreasonable and, more accurately, demonstrably false, it is not entitled to the presumption of correctness normally afforded to allegations in a complaint. *See, e.g., Sprewell*, 266 F.3d at 988.

When entities share an owner, a plaintiff seeking to allege one entity's liability based on the

8

conduct of that shared owner must do more than perfunctorily state that the shared owner was acting on behalf of the target entity. This precept is set forth in *Naghavi v. Belter Health Measurement & Analysis Tech. Co.*, No. 20-CV-01723-H-KSC, 2021 WL 461725, at *6 (S.D. Cal. Feb. 9, 2021) (citing cases) (dismissing plaintiffs' claims with prejudice). There, the Court held that plaintiffs "failed to allege sufficient facts showing that the conduct at issue may be attributed to [moving defendant]" when they alleged that the challenged conduct "was performed by individuals who were dual officers/directors of both [moving and non-moving defendants]." *Id.* Specifically, the Court found plaintiffs' allegations that the dual officers "were acting 'on behalf of [moving defendant]'" insufficient to support directly liability against the defendant, because the complaint lacked "any factual support for these assertions."[9] *Id.*; *see also GEC US 1 LLC v. Frontier Renewables, LLC*, No. 16-CV-1276 YGR, 2016 WL 4677585, at *11 (N.D. Cal. Sept. 7, 2016) (holding, pursuant to "well established principle . . . that directors and officers holding positions with [related entities] can and do 'change hats' to represent the two corporations separately, despite their common ownership," that "the Court reads the allegations to be that Ertefai was traveling in his capacity as a representative of ASH and GEC, ***the parties actually involved in the asset transfer***, and not on behalf of ASH's parent Activ GmbH.") (emphasis added, citation and quotation marks omitted).

Here, similar to the situation in *Naghavi*, the SAC does not include any cognizable factual basis for Plaintiff's conclusory assertions that Falack's alleged actions were taken on behalf of Seven Equity, a stranger to the Lease. 2021 WL 461725, at *6. Rather, Plaintiff's argument that it has sufficiently plead

---

[9] Likewise, courts need not accept as true conclusory allegations that an individual's actions were carried out in a specified capacity. *Cotterill v. City & Cty. of S.F.*, No. C 08-02295 JSW, 2009 WL 1324064, at *5 (N.D. Cal. May 8, 2009) (dismissing claims with prejudice because plaintiff failed to plead non-conclusory allegations that defendants' actions were carried out in personal, rather than official, capacity); *Kanji v. Bank of Am., N.A.*, No. CV 20-3820-RSWL-SK, 2020 WL 8175548, at *5 (C.D. Cal. Aug. 25, 2020) (rejecting plaintiff's breach of fiduciary duty claim based on defendant-bank's role as plaintiff's internet provider because plaintiff "failed to allege any facts that support her allegation that [d]efendant was acting as an internet provider," rather than a bank. "Accordingly, [p]laintiff's characterization that [d]efendant was an internet provider, without more, cannot be construed as anything other than an allegation that is merely conclusory, [an] unwarranted deduction[] of fact, or [an] unreasonable inference[]") (citation and quotation marks omitted); *see also Amaro v. Wolf Firm*, No. LACV1507978JAKEX, 2016 WL 7444849, at *5 (C.D. Cal. Feb. 29, 2016) (considering at the motion to dismiss stage evidence that "Defendant was acting on behalf of another person" rather than in the capacity alleged in the complaint).

DEFENDANT SEVEN EQUITY GROUP, LLC'S MOTION TO DISMISS AND STRIKE
CASE NO. 3:21-CV-03341-EMC

4864-5480-9608.5

Seven Equity's involvement is based precariously on invoices from Perkins+Will, a geotechnical engineering report by another non-party, and a building design from CBRE. SAC ¶¶ 82, 84. But Plaintiff's argument is undone by the slew of contrary documentation of which it disingenuously omits mention, including the Perkins+Will drawings, and other documents, submitted with 420 Taylor Venture's Conditional Use Authorization and Office Allocation Application that list 420 Taylor Ventures, ***not Seven Equity***, as the Premises' owner, and the invoices sent by CBRE to 420 Taylor Ventures, ***not Seven Equity***. *Supra*, p. 6 And, in any event, a non-party's erroneous listing of the incorrect entity on an invoice or report is insufficient to plead, in a non-conclusory fashion, Seven Equity's direct involvement in the purported fraud. *Cf. Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 201703, at *10 (N.D. Cal. Jan. 18, 2017) (dismissing claims against defendant, where, as here, plaintiff argued defendant was "guiding spirit" in alleged wrongdoing, because plaintiff failed adequately to plead that defendant's involvement).

Similarly, Plaintiff points to non-party Deutsche's statements in its SEC filings as establishing Seven Equity's direct involvement in the supposed fraud -- but this theory fails on both the facts and the law. First, and again, this loan has nothing to do with Plaintiff's leasing of the Premises or the negotiations the preceded that Lease. Indeed, the SEC filings were not made until July and August 2020, nearly a year after Plaintiff signed the Lease. That Deutsche names Seven Equity as a "borrower's sponsor" for purposes of a loan that does not involve Plaintiff, nearly a year after Plaintiff signed the Lease, does nothing to show that Seven Equity had any involvement in misconduct alleged in this case, which revolves around the Lease negotiations and measurement of the Premises. Second, Seven Equity's supposed status as a "borrower's sponsor" is relevant at best only to Plaintiff's flawed, and dismissed, alter ego theory and, again, does not plausibly even suggest the conclusion that Seven Equity took any action related to the Premises such that it became a direct participant in the alleged fraud. Third, and again, the statement of a non-party that is a stranger to Seven Equity and to Leasing Defendants is not an admission or action by Seven Equity and surely cannot establish a legal relationship between the entities.

Further, Plaintiff's repeated assertions that Falack's alleged involvement with the Premises was in his capacity as Seven Equity's managing principal reflect nothing more than Plaintiff's wishful thinking. Although these claims are littered throughout the SAC in an apparent effort to create the illusion of

DEFENDANT SEVEN EQUITY GROUP, LLC'S MOTION TO DISMISS AND STRIKE
CASE NO. 3:21-CV-03341-EMC

4864-5480-9608.5

1   pervasive conduct by Seven Equity (*e.g.*, SAC ¶¶ 30, n.3, 31, n.4, 32, 35, 56), empty repetition cannot

2   change the reality:  at all relevant times Falack was acting on behalf of 420 Taylor Ventures, "the part[y]

3   actually involved in the [transaction]." *GEC US 1 LLC*, 2016 WL 4677585, at *11. Thus, the SAC lacks

4   any well-pled allegation that Falack acted on behalf of Seven Equity.

5   Finally, that notices to Leasing Defendants were to be sent ***care of*** Seven Equity does not establish

6   Seven Equity's independent liability – any more than it would establish independent liability for a

7   registered agent or law firm designated to receive contractual notices. Indeed, Leasing Defendants also

8   required notices be sent to their counsel, Rodriguez Wright, LLP. SAC Ex. X, ¶ 34. As such, the SAC

9   fails plausibly to plead any facts supporting Seven Equity's supposed involvement in the conduct alleged

10  in the SAC.

11      **C.      Plaintiff's Attempt To Re-Allege Its Alter Ego Theory of Liability against Seven**

12              **Equity, and Its Insertion of New Allegations Unrelated to Its Attempted**

13              **"Refinement" of Its Claims against Seven Equity, Exceed the Permitted Scope of**

14              **Amendment.**

15      This Court's Order directly found Plaintiff's alter ego allegations to be insufficient as a matter of

16  law, finding that Plaintiff "failed to make the requisite showing for alter ego liability." Further, this Court

17  did not grant Plaintiff leave to replead that theory of liability, instead expressly granting Plaintiff leave to

18  amend only "to allege more specifically that Seven Equity ***had a direct and independent role***" in the

19  conduct alleged in the Complaint. ECF No. 52 at 6 (emphases added). Likewise, at the hearing on Seven

20  Equity's Motion To Dismiss the First Amended Complaint, the Court permitted Plaintiff only limited

21  leave to "refine" that pleading to ***correct*** erroneous allegations contained therein in light of Plaintiff's Rule

22  11 obligations. ECF No. 101, Tr. 21:15-25; 37:19-23; ECF Nos. 93, 96. Defying this Court's clear orders,

23  Plaintiff again attempts to allege that Seven Equity is an alter ego of Leasing Defendants (SAC ¶¶ 79-95)

24  and, further, includes new and different allegations as to all Defendants well beyond the scope of

25  refinement permitted by the Court. SAC ¶¶ 35; 36; the last sentences of 100, 104, 115, 118, 128; and 125,

26  subparagraph (5). Accordingly, the Court should dismiss or strike Plaintiff's alter ego theory of liability

27  in its entirety, and also should strike the new allegations Plaintiff slipped into its SAC that were beyond

28  the Court-prescribed scope of amendment.

4864-5480-9608.5

A plaintiff may not use leave to amend as an invitation "to attempt to resuscitate" a claim, like Plaintiff's alter ego claim, "which was dismissed for legal reasons." *Chandler v. Brennan*, No. CV-20-00924-PHX-DWL, 2021 WL 4503423, at *3 (D. Ariz. Oct. 1, 2021) (finding allegations and claims that exceeded the permissible scope of amendment "have no force and will be disregarded"); *see also PB Farradyne, Inc. v. Peterson*, No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (where court granted plaintiff "*limited* leave to amend" as to a specific theory of liability (emphasis in original), and plaintiff ignored court's mandate and filed an amended complaint containing allegations relating to a different theory of liability, allegations that exceeded permitted scope of amendment were stricken); *accord Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1125 (C.D. Cal. 2015) (striking claims in amended complaint that went beyond scope of amendment).

Here, the SAC asserts an alter ego theory of liability and includes new allegations that have nothing to do with Seven Equity, brazenly transgressing the limited permission to amend granted by this Court to Plaintiff. Therefore, the Court should dismiss and/or strike Plaintiff's alter ego allegations, and should strike the new allegations contained for the first time, in the SAC.

D.      **Even If the Second Amended Complaint Did Not Exceed the Permissible Scope of Amendment, Plaintiff's Alter Ego Theory Should be Dismissed Because Plaintiff Fails Plausibly To Allege Seven Equity Is an Alter Ego of the Leasing Defendants.**

As noted above, this Court concluded, after due consideration of full briefing and oral argument, that Plaintiff's Complaint failed to plead that Seven Equity is the alter ego of Leasing Defendants; accordingly, it did not permit Plaintiff to replead this theory of liability. ECF No. 52 at 6. But even if the Court were to reconsider Plaintiff's alter ego allegations on the merits, those allegations remain insufficient as a matter of law (notwithstanding that Plaintiff now has had the benefit of discovery),[10] and

---

[10] Plaintiff repeatedly argues that, if it just had access to more discovery – to wit, various, unidentified operating and management agreements – it could show (presumably in yet another amended complaint) that Seven Equity is the ultimate owner of Leasing Defendants. Even if this were true, it would do nothing for Plaintiff's alter ego allegations: "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "It is a general principle of corporate law deeply ingrained in our economic and legal systems" that neither parent corporations nor affiliated entities are "liable for the acts of [their] subsidiaries [or affiliates]." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and quotation marks omitted). Indeed, "[t]he insulation of a stockholder from the debts and obligations of his corporation *is the norm, not the*

should be dismissed with prejudice.

Corporations are entitled to a "presumption of corporate separateness," even at the pleading stage. *Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2020 WL 7428320, at *3 (N.D. Cal. Dec. 18, 2020) (granting motion to dismiss because "[p]laintiffs' allegations about funding and a single shared employee are insufficient to overcome the presumption of respect for the corporate form"). Because of this, a plaintiff seeking to hold an entity liable as an alter ego of another entity appropriately bears a heavy burden. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1043 (C.D. Cal. 2015) (citing *Kingdom 5–KR–41, Ltd. v. Star Cruises PLC*, No. 01 Civ. 2946(AGS), 2002 WL 432390, *12 (S.D.N.Y. Mar. 20, 2002)). To overcome this burden – and the presumption of corporate separateness and the law's respect for the corporate form – a plaintiff must adequately plead two elements: "First, there must be such a ***unity of interest and ownership*** between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an ***inequitable result*** if the acts in question are treated as those of the corporation alone." *Gerritsen*, 112 F. Supp. 3d at 1042 (emphasis added). Importantly, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff ***must allege specific facts supporting both of the elements*** of alter ego liability." *Id.* at 1043 (emphasis added). "Underlying both of these factors is a general presumption in favor of respecting the corporate entity[,]" because "[d]isregarding the corporate entity is recognized as an extreme remedy." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).

Here, the Complaint fails to satisfy either of the two elements required to plead alter ego liability.

### i. Plaintiff Does Not Plead Unity of Ownership or Interest.

To plead unity of ownership and interest, "it is well-established that ***'[t]otal ownership and shared management personnel are alone insufficient*** to establish the requisite level of control.'" *Id.* (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)) (emphasis added). Rather, a plaintiff must allege facts "showing that the parent controls the subsidiary to such a degree as to render the latter

***exception.***" *NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 402–03 (1960) (citation omitted, emphasis supplied). "Thus it is hornbook law that the exercise of the control which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary." *Bestfoods*, 524 U.S. at 61 (citation and quotation marks omitted; omission in original). Accordingly, even if Seven Equity did own, and even controlled, Leasing Defendants, that would be insufficient to show it is their alter ego. This most basic tenet of American corporate law must not be cast aside.

DEFENDANT SEVEN EQUITY GROUP, LLC'S MOTION TO DISMISS AND STRIKE
CASE NO. 3:21-CV-03341-EMC

the mere instrumentality of the former" (*Gerritsen*, 116 F. Supp. 3d at 1138), such that "separate personalities" of the entities no longer exist. *GEC US 1 LLC*, 2016 WL 4677585, at *14. Such a "unity of interest and ownership" may be alleged through factors such as "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Gerritsen*, 112 F. Supp. 3d at 1043.

When "the [p]laintiff merely pleads the legal elements of alter ego liability without providing any supporting facts that such a conclusion is plausible," dismissal is warranted. *Greenbaum v. KC Jewelry, Inc.*, No. 216CV06845SVWJPR, 2017 WL 5496224, at *5 (C.D. Cal. Jan. 25, 2017) (dismissing alter ego allegations for failure to plead unity of interest because the complaint "does not contain any factual allegations that [entities] were in fact the same entity, and therefore the [p]laintiff fails to properly allege a unity of interest").

Here, Plaintiff once again ignores the unity of ownership requirement altogether, presumably because it well knows there is none between Seven Equity and Leasing Defendants. While Falack is a (but not the only) member of both 420 Taylor Ventures and Seven Equity, that is as far as the overlap in ownership goes. ECF No. 1 at 3. Indeed, in addition to Falack, there are *11* other owners of 420 Taylor Ventures, and *36* other owners of Leasing Defendants in total, *none* of whom has any interest in Seven Equity. *Id.* Nor does Falack have any ownership interest in any of the other Leasing Defendants. *Id.* California courts routinely have held that even an overlap of "several common officers and directors" is insufficient to demonstrate alter ego liability, let alone, as here, an overlap of a mere single individual. *Phillips v. Cooper Lab'ys*, 215 Cal. App. 3d 1648, 1660 (1989).

Further, Plaintiff pleads "on information and belief" that Leasing Defendants and Seven Equity "fail[] to uphold corporate formalities." SAC ¶ 89. It persists in this allegation notwithstanding its full knowledge of the ownership structure of each Leasing Defendant, which is set forth in the Notice of Removal. The Court need not accept as true allegations such as this, as it is plainly contradicted by evidence properly considered at the motion to dismiss stage. *Sprewell*, 266 F.3d at 988. Moreover, "allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)" unless they – unlike Plaintiff's allegations in the SAC – "state the facts on which the[]

belief is founded." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Thus, Plaintiff's threadbare alter ego allegations do not, and cannot, establish the unity of ownership required to plead alter ego liability.

Likewise, Plaintiff has not pleaded, and cannot plead, unity of interest between Seven Equity and Leasing Defendants. Plaintiff relies on Falack's Seven Equity email address as its supposed evidence of unity of interest, but allegations of "the same email address domain" are insufficient to plead unity of interest. *Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*, No. 5:20-CV-04184-EJD, 2020 WL 6290377, at *7 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co., Ltd*, No. 20-17237, 2021 WL 3783096 (9th Cir. Aug. 26, 2021) (plaintiff failed to plead alter ego theory with allegations that defendants "operate on the same corporate website, share the same email address domain, and also have a common interactive online system for information and transactions" because such shared administrative functions "do not reflect an abuse of the corporate form and existence of an alter ego relationship."); *Lifecare Int'l, Inc. v. St. Jude Med., Inc.*, No. CV-98-2263CAS RNBX, 1998 WL 469868, at *2 (C.D. Cal. June 1, 1998) ("Mere allegations that officers of a parent and subsidiary had cards identifying them with each other is not a sufficient allegation to establish an alter ego."); *cf. In re Calif. Gas. Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 4461199, at *4 (N.D. Cal. Sept. 29, 2021) (allegations that entities shared employees, that all employees had same email domain, and that employees were identified in their emails as supporting the operations of two entities, insufficient to show entities were single integrated operation).

Plaintiff's allegation that Seven Equity's alter ego relationship is established by its supposed status as the "borrower's sponsor," as stated in non-party Deutsche's SEC filings, falls equally flat. A diligent search revealed *no* cases in which any court ruled that a "borrower's sponsor" could be held liable as the borrower's alter ego. To the contrary, as this Court recognized, the Ninth Circuit consistently has *rejected* the analogous contention that guaranteeing a loan is sufficient to establish alter ego liability. ECF No. 101, Tr. 20:13-18 ("Guarantee of loans . . . doesn't necessarily mean that they are – that they are involved in every aspect of the business or the material aspects of the business."); *e.g. Kramer Motors, Inc. v. Brit. Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (allegation, *inter alia*, that defendant "has guaranteed obligations of [alleged alter ego] to United States banks" insufficient to establish alter ego liability); *Doe*

15

1  *v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) *abrogated on other grounds by Williams v. Yamaha*

2  *Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) (no alter ego relationship despite allegations of alleged alter

3  ego's "(1) involvement in its subsidiaries' acquisitions, divestments and capital expenditures; (2)

4  formulation of general business policies and strategies applicable to its subsidiaries . . . ; (3) ***provision of***

5  ***loans and other types of financing to subsidiaries***; (4) maintenance of overlapping directors and officers

6  with its subsidiaries; and (5) ***alleged undercapitalization of holding company subsidiaries***.") (emphasis

7  added); *Iconlab, Inc. v. Bausch Health Cos., Inc.*, 828 F. App'x 363, 364–65 (9th Cir. 2020) (allegations

8  that defendant approved alleged alter egos' "large purchases, financed their activity, issued collective

9  media releases, and submitted consolidated earnings reports" insufficient to show unity of interest); *Calif.*

10  *Dep't of Toxic Substances Control v. NL Indus.*, No. 220CV11293SVWJPR, 2021 WL 5933140, at *7

11  (C.D. Cal. Oct. 13, 2021) (guaranteeing loan to third party bank insufficient to establish unity of interest).

12  In light of the foregoing case law, it is clear that Seven Equity's alleged status as the "borrower's sponsor,"

13  and its alleged receipt of funds from a loan related to the Premises (both well after the events giving rise

14  to Plaintiff's claims), are insufficient to establish any unity of interest between Leasing Defendants and

15  Seven Equity.

16         Likewise, Plaintiff's conclusory allegation that Leasing Defendants are "shell companies" (SAC

17  ¶ 91) is insufficient to establish unity of interest, as a matter of law and of fact. In *Greenbaum*, 2017 WL

18  5496224, at *5, the Court held that the allegation that defendant was "mere shell, instrumentality and

19  conduit through which [the individual defendants]" conducted business "is a prototypical example of a

20  conclusory allegation." And that conclusion is flatly contradicted by documents in Plaintiff's possession,

21  including documents showing that CBRE, Stevenson, JLL, and others contracted with 420 Taylor

22  Ventures, ***not Seven Equity***. *See* ECF No. 95 (Seven Equity identified for Plaintiff over 40 documents

23  establishing that 420 Taylor Ventures, not ***Seven Equity***, contracted related to the Premises).

24         Nor can Plaintiff establish unity of interest between Seven Equity and 420 Taylor Ventures, let

25  alone between Seven Equity and the remaining Leasing Defendants by pleading that Falack was an owner

26  of both Seven Equity and 420 Taylor Ventures. "[I]t is well-established that '[t]otal ownership and shared

27  management personnel are alone insufficient to establish" alter ego liability. *GEC US 1 LLC*, 2016 WL

28  4677585, at *14. Rather, as explained above, Courts consider, *inter alia*, whether the plaintiff plausibly

16

4864-5480-9608.5

has pled commingling of funds, the holding out of one entity as liable for the debts of the other, identical equitable ownership, directors, and officers, and disregard of corporate formalities. *See Yih*, 2020 WL 6290377 at *4. Here, Plaintiff has not, and cannot, plausibly plead that Seven Equity and Leasing Defendants disregard corporate formalities or maintain identical ownership, directors, or officers. Plaintiff falls back on pleading "on information and belief" that Leasing Defendants are undercapitalized, but Plaintiff knows, and admits, that Leasing Defendants own, and have substantial equity in, the Premises, a significant capital asset. SAC ¶¶ 6, 137.

Ultimately, Plaintiff, recognizing that it cannot plead corporate unity of interest, focuses on the conduct of Falack, the *only* one of *37* individuals who is an owner of both Seven Equity and any of Leasing Defendants (ECF No. 1), and asks the Court to speculate, without any factual support, that in connection with the alleged misconduct, Falack must have been acting in his capacity as an owner of Seven Equity, rather than as an owner of Leasing Defendant 420 Taylor Ventures.[11] In light of Falack's status as an owner of 420 Taylor Ventures, which *is* a party to the Lease and which signed the Letter of Intent, it is patently unreasonable to jump to this conclusion. *Lifecare Int'l, Inc.,* 1998 WL 469868, at *2 (dismissing claims against alleged alter ego and finding, despite allegation to the contrary, that "[t]he [alleged alter ego's] products sold by [plaintiff] during the course of its relationship with St. Jude *were sold on behalf of St. Jude, not [alleged alter ego]*" (emphasis added). Thus, Plaintiff's repeated, baseless assertions that Falack at all times acted on behalf of Seven Equity must be rejected also as "merely conclusory, unreasonable deductions of fact, [and] unreasonable inferences." *See Sprewell*, 266 F.3d at 988; *Gerritsen*, 112 F. Supp. 3d at 1043.

ii.  Plaintiff Does Not Plead Facts Sufficient To Show that Denial of Alter Ego Liability Would Lead to an Inequitable Result.

Even if Plaintiff had pled unity of ownership and interest – it has not – the SAC still must be dismissed as to Seven Equity because Plaintiff fails to plead alleged facts sufficient to show that denial of alter ego liability will cause an inequitable outcome. "California courts have rejected the view [advanced by Plaintiff, SAC ¶ 95] that the potential difficulty a plaintiff faces collecting a judgment is an inequitable

---

[11] *E.g.* SAC ¶¶ 22, 27, 28, 30, n.3, 31, n.4, 32, 35, 36, 37, 38, 39, 40, 49, 56.

DEFENDANT SEVEN EQUITY GROUP, LLC'S MOTION TO DISMISS AND STRIKE
CASE NO. 3:21-CV-03341-EMC

4864-5480-9608.5

result that warrants application of the alter ego doctrine." *Neilson v. Union Bank of Calif., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003). Indeed, a "[p]laintiff cannot meet the inequity element by making conclusory statements that 'it is not certain that [a defendant] has sufficient assets to satisfy a judgment in this action.'" *Sawyer v. Bill Me Later, Inc.*, No. CV1004461SJOJCGX, 2010 WL 11492736, at *14 (C.D. Cal. Dec. 14, 2010). Yet, that is exactly what Plaintiff attempts to do here. SAC ¶ 95.

When a complaint, like the SAC, "merely argues that . . . [the defendant] was inadequately capitalized to the point of being illusory or trifling" but "does not allege what the capitalization of the corporate defendant was or how it was inadequate[]," it fails to plead facts sufficient to shore up an alter ego theory. *Greenbaum*, 2017 WL 5496224, at *5. Plaintiff therefore – once again – fails to allege that Seven Equity must be considered an alter ego of Leasing Defendants to avoid an inequitable result. Moreover, the SAC's allegations do establish that Leasing Defendants have substantial equity in the Premises, a significant capital asset. SAC ¶¶ 6, 137; ECF No. 101, Tr. 28:3-9; *supra* p. 6. Accordingly, Seven Equity must be dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff has failed, once again, to state any claim against Seven Equity, either as a direct and independent participant in the allegedly wrongful conduct or as an alter ego of Leasing Defendants. As such, and because this is Plaintiff's ***fifth*** failed attempt to state a claim against Seven Equity, and its ***third*** such pleading, the SAC insofar as it alleges any claim against Seven Equity should be dismissed, and/or stricken, with prejudice.

Additionally, the Court should strike the SAC new allegations, namely, paragraphs 35; 36; the last sentences of paragraphs 100, 104, 115, 118, 128; and 125, subparagraph (5), as violating this Court's Orders delineating the permissible scope of amendment.

4864-5480-9608.5

1    DATE: January 11, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOLEY & LARDNER LLP
LEWIS ZIROGIANNIS
JAIME DORENBAUM
JASON Y. WU
HEATHER A. LEE


By: /s/ Lewis Zirogiannis
    Lewis Zirogiannis (Bar No. 321955)
     lzirogiannis@foley.com
    Jaime Dorenbaum (Bar No. 289555)
     jdorenbaum@foley.com
    Jason Wu (Bar No. 313368)
     jwu@foley.com
    Heather A. Lee (*admitted pro hac vice*)
     hlee@foley.com
    555 California Street, Suite 1700
    San Francisco, California 94104-1531
    Telephone: (415) 434-4484
    Facsimile: (415) 434-4507

*Attorneys for Defendants 420 Taylor Ventures, LLC,*
*NT 420 Taylor Owner LLC, NH 420 Taylor Owner LLC,*
*420 Taylor Holdings Owner LLC, and Seven Equity*
*Group, LLC*

DEFENDANT SEVEN EQUITY GROUP, LLC'S MOTION TO DISMISS AND STRIKE
CASE NO. 3:21-CV-03341-EMC

4864-5480-9608.5