LEWIS ZIROGIANNIS, CA Bar No. 321955
 lzirogiannis@foley.com
JAIME DORENBAUM, CA Bar No. 289555
 jdorenbaum@foley.com
JASON Y. WU, CA Bar No. 313368
 jwu@foley.com
HEATHER A. LEE (*admitted pro hac vice*)
 hlee@foley.com
FOLEY & LARDNER LLP
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE:  415.434.4507

*Attorneys for Defendants 420 Taylor Ventures, LLC,
NT 420 Taylor Owner LLC, NH 420 Taylor Owner LLC,
420 Taylor Holdings Owner LLC, and Seven Equity Group, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEXTDOOR, INC., a Delaware Corporation,<br><br>PLAINTIFF,<br><br>V.<br><br>420 TAYLOR VENTURES, LLC, a Delaware Limited Liability Company, NT 420 TAYLOR OWNER LLC, a Delaware Limited Liability Company, NH 420 TAYLOR OWNER LLC, a Delaware Limited Liability Company, 420 TAYLOR HOLDINGS OWNER LLC, a Delaware Limited Liability Company, SEVEN EQUITY GROUP, LLC, and DOES 1–50,<br><br>DEFENDANTS. | CASE NO. 3:21-CV-03341-EMC<br><br>**DEFENDANT SEVEN EQUITY GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT**<br><br>Removed from the Superior Court of the State of California for the County of San Francisco, Case No. CGC-21-590369<br><br>Complaint Filed: March 11, 2021<br>Notice of Removal Filed: May 5, 2021<br><br>Date: February 24, 2022<br>Time: 1:30 p.m.<br>Courtroom By Videoconference<br><br>Hon. Edward M. Chen<br>Trial Date: October 31, 2022 |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A.    The SAC Fails To Allege That Seven Equity Had A Direct Role In The Alleged Conduct. ..................................................................................................................2

    B.    Plaintiff Exceeded The Permitted Scope Of Amendment In Restating Its Baseless Alter Ego Theory, And Including New Allegations, In The SAC........................................6

    C.    Seven Equity Is Not An Alter Ego Of The Leasing Defendants. .........................................7

        1.    The SAC Fails To Plead Unity of Ownership or Interest between Seven Equity and the Leasing Defendants. ..................................................................8

        2.    Plaintiff Does Not Plead that an Inequitable Result Will Occur If Seven Equity's Corporate Form Is Respected. ..................................................................12

III. CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ..................................................................................................4

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ...............................................................................................12

*Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*,
  2019 WL 1768619 (N.D. Cal. Apr. 1, 2019), *R&R adopted*, 2019 WL 1767332 (N.D. Cal. Apr. 22, 2019) ...................................................................................................................................5, 11

*Calvert v. Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995)........................................................................................8, 9

*Chandler v. Brennan*,
  No. CV-20-00924-PHX-DWL, 2021 WL 4503423 (D. Ariz. Oct. 1, 2021) ..........................7

*Colt Studio, Inc. v. Badpuppy Enter.*,
  75 F. Supp. 2d 1104 (C.D. Cal. 1999) ...................................................................................12

*Covington v. Curtis*,
  No. SACV 12-1258 JVS, 2012 WL 13162890 (C.D. Cal. Oct. 30, 2012) (Opp. )................9

*GEC US 1 LLC v. Frontier Renewables, LLC*,
  No. 16-CV-1276 YGR, 2016 WL 4677585 (N.D. Cal. Sept. 7, 2016)....................................6

*Gerritsen v. Warner Bros. Entm't Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) ........................................................................8, 9, 10

*Giotta v. Ocwen Fin. Corp.*,
  Case No. 15-cv-00620-BLF, 2015 WL 8527520 (N.D. Cal. Dec. 11, 2015) .........................5

*Gordon v. APM Terminals N. Am., Inc.*,
  No. 17-CV-03970-MEJ, 2017 WL 3838092 (N.D. Cal. Sept. 1, 2017) ..................................8

*Greenbaum v. KC Jewelry, Inc.*,
  No. 216CV06845SVWJPR, 2017 WL 5496224 (C.D. Cal. Jan. 25, 2017) .....................7, 13

*Guardant Health, Inc. v. Natera, Inc.*,
  No. 21-CV-04062-EMC, 2022 WL 162706 (N.D. Cal. Jan. 18, 2022) (Opp. ) .....................5

*Hypower, Inc. v. SunLink Corp.*,
  No. 14-CV-00740-TEH, 2014 WL 1618379 (N.D. Cal. Apr. 21, 2014).................................8

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..................................................................................................4

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) ..................................................................................................10

*Lifecare Int'l, Inc. v. St. Jude Med., Inc.*,
    No. CV-98-2263CAS-RNBX, 1998 WL 469868 (C.D. Cal. June 1, 1998) .......................................11

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ......................................................................................................9

*N.L.R.B. v. O'Neill*,
    965 F.2d 1522 (9th Cir. 1992) (Opp. ) ..............................................................................10, 11

*Naghavi v. Belter Health Measurement & Analysis Tech. Co.*,
    No. 20-CV-01723-H-KSC, 2021 WL 461725 (S.D. Cal. Feb. 9, 2021) ................................6

*Neilson v. Union Bank of Calif., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................................12, 13

*PB Farradyne, Inc. v. Peterson*,
    No. C 05-3447 SI, 2006 WL 2578273 (N.D. Cal. Sept. 6, 2006) ............................................7

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ....................................................................................................9

*Sawyer v. Bill Me Later, Inc.*,
    No. CV1004461SJOJCGX, 2010 WL 11492736 (C.D. Cal. Dec. 14, 2010) .........................7

*SEC v. Sugarman*,
    2020 WL 5819848 (S.D.N.Y. Sept. 30, 2020)..........................................................................4

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ......................................................................................................2

*Shanghai Automation Instrument Co. v. Kuei*,
    194 F. Supp. 2d 995 (N.D. Cal. 2001) (Opp. ).......................................................................10

*Sheppard v. Staffmark Inv.*,
    LLC, No. 20-CV-05443-BLF, 2021 WL 690260 (N.D. Cal. Feb. 23, 2021) .........................8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001)...3, 9, 11

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ....................................................................................................4

*Total Benefits Plan. Agency Inc. v. Anthem Blue Cross & Blue Shield*,
    630 F. Supp. 2d 842 (S.D. Ohio 2007), *aff'd,* 552 F.3d 430 (6th Cir. 2008)..........................8

*U.S. v. Karam*,
    2011 WL 806673 (E.D. Mich. Mar. 2, 2011) (Opp. ).............................................................5

*United States v. Pangang Grp. Co.*,
    879 F. Supp. 2d 1052 (N.D. Cal. 2012) .......................................................................................10

*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*,
    No. 5:20-CV-04184-EJD, 2020 WL 6290377 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom.*, No. 20-
    17237, 2021 WL 3783096 (9th Cir. Aug. 26, 2021) .................................................................9, 11

**<u>California Cases</u>**

*Doney v. TRW, Inc.*,
    33 Cal. App. 4th 245 (1995) .......................................................................................................10

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
    235 Cal. App. 3d 1220 (1991) (Opp. ) ....................................................................................7, 10

*Mani Invs. v. Harouche*,
    No. B263486, 2016 WL 2901755 (Cal. Ct. App. May 13, 2016) ...............................................11

*McLaughlin v. L. Bloom Sons Co.*,
    206 Cal. App. 2d 848, 24 Cal. Rptr. 311 (1962) .........................................................................11

*Pan Pac. Sash & Door Co. v. Greendale Park, Inc.*,
    166 Cal. App. 2d 652 (1958) ......................................................................................................11

*Phillips v. Cooper Lab'ys*,
    215 Cal. App. 3d 1648 (1989) ......................................................................................................9

*Talbot v. Fresno-Pac. Corp.*,
    181 Cal. App. 2d 425 (1960) ......................................................................................................12

**<u>Other Authorities</u>**

Fed. R. Civ. P. 12 ..............................................................................................................................7

## I. INTRODUCTION

The SAC[1] is long on form, but short on substance – and Plaintiff's Opposition (ECF No. 114) fails to remedy that fatal flaw. Plaintiff has attached nearly 3 dozen exhibits to try to buoy up the SAC, and, like the SAC, the Opposition relies heavily on those documents, in the hopes that they will link Seven Equity to Plaintiff and its leasing of the Premises, and thereby create the illusion of support for Plaintiff's allegations. However, even cursory scrutiny of these documents reveals that Plaintiff's attempt has failed: the documents in no way demonstrate that Seven Equity was involved in the leasing of the Premises, ever dealt with Plaintiff in any capacity whatsoever, or was otherwise involved in the specific conduct alleged in the SAC. Accordingly, the exhibits do not support the allegations and legal theories for which Plaintiff cites them.

Plaintiff's Opposition includes twelve pages that are materially identical pages from its prior opposition papers, repeating its wholly unsupported and misleading version of the facts and allegations of its SAC.[2] This does not successfully distract from the critical truth: Plaintiff's continued inability, despite substantial discovery, to state a claim against Seven Equity, either as a direct participant in the fraud or an alter ego of Leasing Defendants. Indeed, neither the SAC nor the Opposition addresses the essential unity of ownership requirement of the alter ego test. Nor do the facts or law cited in the Opposition support the SAC's theory of direct liability against Seven Equity, as Seven Equity is not an owner of the Premises, is not a party to the Lease, and ***never communicated with Plaintiff***, let alone regarding the Lease. Plaintiff does not, because it cannot, even suggest that it believed it was contracting or corresponding with Seven Equity. As such, Plaintiff's suggestion that Seven Equity fraudulently induced it to enter the Lease (Opp. at 15) is unsupported and unsupportable.

Because Plaintiff once again, and despite months of discovery and the production of thousands of documents[3], has failed to state any claim against Seven Equity, either directly or as the alter ego of

---

[1] Capitalized terms not defined herein have the meaning assigned in the Motion to Dismiss (ECF No. 75).
[2] For example, Plaintiff alleges "CBRE's Exclusive Listing Agreement for the Premises was signed by Falack and makes no reference to any of the 420 Taylor LLCs" but does not disclose that the referenced agreement *likewise makes no mention of Seven Equity.* Opp. at 5, n.2. Plaintiff also tries to leave the Court with the impression that Defendants failed to produce documents in time for it to amend its complaint. Opp. at 12 ("Nextdoor filed its [FAC] on September 23, 2021, and the very next day, Defendants produced over 200 documents") – but omits that, on September 7 and 17, 2021, before the FAC was filed, Leasing Defendants produced almost 650 documents.
[3] Plaintiff complains that Defendants have not produced their "current LLC, operating, and management

1

Leasing Defendants, this Court should grant Seven Equity's Motion to dismiss the SAC, with prejudice.

## II. ARGUMENT

### A. The SAC Fails To Allege That Seven Equity Had A Direct Role In The Alleged Conduct.

Plaintiff devotes a dozen pages of its Opposition to repeating its SAC allegations, but *none* of those allegations connects Seven Equity to the alleged fraud in this case. Indeed, the SAC's allegations as to Seven Equity's supposed direct role in the purported fraud actually relate to matters in which Plaintiff was wholly uninvolved and that have nothing to do with the Lease. For example, Plaintiff focuses on Seven Equity's inclusion as an additional insured on insurance policies relating to the Premises; SEC disclosures prepared and filed by Deutsche listing Seven Equity as the "borrower's sponsor";[4] Falack's use of his Seven Equity email address when corresponding regarding the Premises; and documents *from non-parties*, including Perkins+Will and Stevenson. SAC ¶¶ 23-30, n.3, 31, n.4, 38, 82, 84, 85. Critically, *none* of these allegations has anything to do with Plaintiff, the Lease, or the fraud alleged in the SAC.

Moreover, in the Opposition, Plaintiff disingenuously ignores, because they do not fit into its contrived narrative, certain essential facts. For example:

- Plaintiff ignores that *420 Taylor Ventures, not Seven Equity*, contracted with, and was invoiced by, JLL, Plaintiff's broker for the Lease transaction, as well as other non-parties that also were involved in brokering the Lease. It is, of course, highly relevant to

---

agreements, as well as those for their intermediary affiliates" or the joint venture agreement between Seven Equity and non-party Nakash Holdings, LLC. Plaintiff is wrong: Leasing Defendants provided not only their LLC agreements, which amend and restate their original operating agreements, but also the operating agreements for the owners of 420 Taylor Holdings Owner, LLC, NH 420 Taylor Owner, LLC, and NT 420 Taylor Owner LLC; and 420 Taylor Ventures' 2016 Operating Agreement. Moreover, Plaintiff never even served a request for production for many of the other documents it now claims it is missing. And, finally, Plaintiff is not entitled to discovery before it even can plead a claim, especially discovery from unidentified "affiliates." *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, Plaintiff's grievance about Leasing Defendant's production is unfounded. There is nothing improper about Defendants' production, which shows that Seven Equity lacks any ownership interest in any of the Leasing Defendants, thereby belying Plaintiff's false narrative regarding Seven Equity.

[4] In its Opposition, Plaintiff for the first time argues that Seven Equity's alleged financing agent, Ackman Ziff Real Estate Group, LLC, prepared the SEC disclosures. Even if these new allegations were contained in the SAC and properly were before the Court, they are irrelevant, as the SEC disclosures relate to whether Seven Equity was involved in the acquisition, financing, and development of the Premises – none of which has anything to do with Plaintiff, the Lease, or the purported fraud described in the SAC.

2
DEFENDANT SEVEN EQUITY GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:21-CV-03341-EMC
4891-0157-7228.6

> Plaintiff's claims – that Seven Equity was involved in the supposed fraud *regarding the Lease* – that Seven Equity had no relationship with these Lease-related parties.

- Plaintiff ignores that the drawings Perkins+Will prepared, and other documents submitted with 420 Taylor Ventures' Conditional Use Authorization and Office Allocation Application, list ***420 Taylor Ventures, not Seven Equity***, as the Premises' owner. *See* Mot. p. 6.

- Plaintiff ignores that, as its own exhibit reveals, Stevenson's direction of an invoice to Seven Equity, rather than 420 Taylor Ventures, was ***a mistake made by Stevenson***, and ***corrected by Falack nearly two years prior to Plaintiff's filing of this lawsuit***. SAC, Ex. M.

- Plaintiff not only ignores that the Lease provides for notices thereunder to be sent ***care of*** Seven Equity and to Leasing Defendants' counsel, but mischaracterizes that provision, falsely alleging that Seven Equity was designated – on its own behalf – to receive notices under the Lease. *Compare* Opp. at 2 *with* SAC Ex. X, ¶ 34. To the contrary, as Plaintiff well knows, the Court already has indicated that it rejects this "care of" language as a factor sufficient to give rise to direct liability.[5]

Plaintiff cannot brush these facts under the rug, as it tries to do, by dismissing Seven Equity's reliance on them as mere conflicting interpretations of documents (Opp. at 17). The documents Plaintiff attaches to the SAC flatly contradict its claims, and the Court need not accept Plaintiff's citations to cherry-picked portions of documents when those citations present a false story. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001). For example, and without limitation, Plaintiff cannot plausibly argue, and the Court need not accept, that Seven Equity contracted with Stevenson regarding the Lease when it is undisputed that Falack ***corrected*** Stevenson's invoice well before the initiation of this lawsuit, and told Stevenson to invoice 420 Taylor Ventures. SAC ¶ 31, n.4 (admitting that Falack asked Stevenson to invoice 420 Taylor Ventures on June 18, 2019). Nor can Plaintiff plausibly allege that Seven Equity received notices

---

[5] ECF No. 101, Tr. 18:8-15; 19:15-19 ("Give me your best document -- point out your best documents that show unequivocally it is ***not just Ray Falack care of*** but actual Seven Equity that was the contracting or engaging party, ***not relying on an e-mail address handle or a care of***") (emphasis added).

1  regarding the Lease on its own behalf, when it knows those notices were sent to the Leasing Defendants
2  *care of* Seven Equity.

3  Further, the case law cited by Plaintiff provides no support for its allegations. Plaintiff's
4  opposition once again relies on *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676
5  (9th Cir. 2018), and *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir.
6  2016). Opp. at 13, 16-17. Plaintiff's reliance, however, still is misplaced, as the holdings in *Silingo* and
7  *Swoben* discussed the permissibility of **group pleading** of fraud against defendants **that all played the**
8  **"same role" in the alleged fraud**. *Silingo,* 904 F.3d at 677, 680-81 (plaintiff, which had utilized group
9  pleading to state fraud allegations, was not required to differentiate its allegations against individual
10 defendants because all of the defendants allegedly committed the same misconduct); *Swoben*, 848 F.3d
11 at 1161 (pleadings may use collective allegations to describe actions of multiple defendants alleged to
12 have engaged in the same conduct). Put differently, in *Swoben* and *Silingo*, group pleading was
13 employed against defendants that were similarly situated "spokes" – not the hub – in a "hub and spoke"
14 conspiracy. Indeed, the Ninth Circuit in *Silingo* recognized this exact distinction, holding that collective
15 allegations can address only "any ***parallel*** actions of the '***spokes***.'" 904 F.3d at 678 (emphasis added).[6]

16 Unlike in Plaintiff's cited cases, Seven Equity's Motion is not based upon improper group
17 pleading. Nevertheless, Plaintiff does not even allege that Seven Equity played the same role as the
18 Leasing Defendants, as parallel "spokes" in the alleged fraud. Rather, Plaintiff alleges (insufficiently)
19 that Seven Equity played a completely distinct role from the Leasing Defendants—as the supposed
20 singular "'hub' and ringmaster" of the alleged fraud. SAC ¶ 2. Thus, the holdings of *Silingo* and
21 *Swoben*, which were limited to instances in which group pleading was raised against defendants with the
22 "same role" in the alleged fraud, are inapplicable. *Silingo*, 904 F.3d at 677; *Swoben*, 848 F.3d 1161.

---

[6] Similarly, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), did not even address the sufficiency of the plaintiff's allegations against a particular defendant. Rather, *Khoja*, a securities fraud case, primarily addressed whether the plaintiff adequately alleged that certain omissions and misstatements constituted actionable securities fraud. *See id. Khoja*, therefore, is irrelevant here. *SEC v. Sugarman*, 2020 WL 5819848, *6 (S.D.N.Y. Sept. 30, 2020), another securities fraud case, also is distinguishable as, there, the SEC actually had pled that the defendant engaged in specific actions in furtherance of a fraudulent scheme. The defendant challenged the assertion that his conduct was inherently fraudulent – but did not contest his involvement in it. *Id.* at *7. Indeed, the Court noted that it was disregarding the SEC's other, conclusory allegations that certain actions were carried out with the defendant's knowledge and consent, and that the defendant was the supposed mastermind of the fraud. *Id.* at *6-*7.

Plaintiff also contends *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, 2019 WL 1768619 (N.D. Cal. Apr. 1, 2019), *R&R adopted*, 2019 WL 1767332 (N.D. Cal. Apr. 22, 2019) supports its direct liability claim. Opp. at 14. But *Cadence Design* is an alter ego case. Moreover, myriad factors beyond the defendant's email supported the Court's finding of alter ego liability there, including, *inter alia*:

- the CEO of Entity 1 testified that he personally owned 70% of Entity 2;
- tax records demonstrated that Entity 1 owned 70% of Entity 2;
- the same individuals served as officers and directors of both entities simultaneously;
- the entities comingled funds, as evidenced by financial statements, and by Entity 1's CEO's use of Entity 2's funds to pay Entity 1's expenses; and
- the entities publicly presented themselves as a single entity.

*Id.* at *5-6. Thus, not only is *Cadence Design* irrelevant to Plaintiff's direct liability theory, but it also demonstrates the shortcomings of Plaintiff's alter ego allegations, as discussed further *infra*.

Further, Plaintiff's SAC fails to state a claim against Seven Equity because it pleads **no facts** that demonstrate that Seven Equity had **anything** to do with the Lease or with Plaintiff, let alone facts sufficient to show, as is the crux of Plaintiff's complaint against Seven Equity, that Seven Equity fraudulently induced Plaintiff to enter the Lease. *See* Opp. at 15. Unlike in *U.S. v. Karam*, 2011 WL 806673 (E.D. Mich. Mar. 2, 2011) (Opp. at 15), a criminal case subject to an entirely different standard for dismissal and where the indictment alleged **the defendant** signed fraudulent warranty deeds and fraudulently concealed information from a bank, Plaintiff does not plead Seven Equity made **any** representation (or misleading omission) to Plaintiff. Plaintiff's citation to *Giotta v. Ocwen Fin. Corp.*, Case No. 15-cv-00620-BLF, 2015 WL 8527520 (N.D. Cal. Dec. 11, 2015), a RICO case, is unavailing for the same reason. There, the defendant specifically directed, authorized, and participated in the alleged fraud against the plaintiffs. And *Guardant Health, Inc. v. Natera, Inc.*, No. 21-CV-04062-EMC, 2022 WL 162706, at *6 (N.D. Cal. Jan. 18, 2022) (Opp. at 17), also is inapposite, as there, this Court refused to dismiss counterclaims because they plausibly alleged the falsity of **the counter-defendant's statements**.

Plaintiff also attempts to argue that Seven Equity is directly liable for the alleged fraud because (i) SEC disclosures filed well after Plaintiff entered the Lease, and which of course have nothing to do

5

1   with Plaintiff, list Seven Equity as the "borrower's sponsor"; and (ii) third parties listed Seven Equity on
2   certain invoices, which Plaintiff never saw before entering into, and which have nothing to do with, the
3   Lease. *E.g.* Opp. at 14. However, these documents are extraneous to the Lease, and never were seen (and
4   therefore, could not have been relied on) by Plaintiff before it leased the Premises. Thus, they
5   accomplish nothing to show Seven Equity was involved in the purported fraud.

6   Nor does Falack's use of his Seven Equity email address show that he was acting for Seven
7   Equity when corresponding about the Premises. Seven Equity does not own the Premises, and is not a
8   party to the Lease. Under established precedent, Plaintiff's say-so that Falack was acting on behalf of
9   Seven Equity, rather than 420 Taylor Ventures, an owner of the Premises, simply because of his email
10  domain is insufficient to establish Seven Equity's independent liability. *E.g. Naghavi v. Belter Health*
11  *Measurement & Analysis Tech. Co.*, No. 20-CV-01723-H-KSC, 2021 WL 461725, at *6 (S.D. Cal. Feb.
12  9, 2021) (allegations that directors were acting on behalf of specified entity insufficient to plead
13  directors were in fact acting on behalf of that entity); *GEC US 1 LLC v. Frontier Renewables, LLC*, No.
14  16-CV-1276 YGR, 2016 WL 4677585, at *11 (N.D. Cal. Sept. 7, 2016) ("The Court reads the
15  allegations to be that Ertefai was traveling in his capacity as a representative of ASH and GEC, ***the***
16  ***parties actually involved in the asset transfer***, and not on behalf of ASH's parent Activ GmbH")
17  (emphasis added).

18  In short, Plaintiff's attempt to bring Seven Equity into this dispute must fail, as Plaintiff pleads
19  no fact linking Seven Equity to the Lease, the Plaintiff, or the fraud alleged in the SAC.

20  **B.   Plaintiff Exceeded The Permitted Scope Of Amendment In Restating Its Baseless**
21  **Alter Ego Theory, And Including New Allegations, In The SAC.**

22  To the extent that Plaintiff's claims against Seven Equity are premised upon Seven Equity's
23  status as an alleged alter ego of the Leasing Defendants, the Court should dismiss the SAC as to Seven
24  Equity, because the Court never allowed Plaintiff to amend its alter ego theory. Rather, the Court held
25  that Plaintiff "failed to make the requisite showing for alter ego liability" and expressly granted Plaintiff
26  leave to amend only "to allege more specifically that Seven Equity ***had a direct and independent role***"
27  in the conduct alleged in the Complaint. ECF No. 52 at 6 (emphasis added). Likewise, in permitting
28  Plaintiff to amend the FAC, the Court specifically and narrowly limited the scope of amendment to

"refining" that pleading to correct Plaintiff's false allegations in light of Plaintiff's Rule 11 obligations. ECF No. 101, Tr. 21:15-25; 37:19-23 ("I would like to see a complaint amended on those points, not to change stuff, but, I mean, [for] clarification on the points that we have raised, about who signed what on whose behalf, and all that sort of stuff"); ECF Nos. 93, 96. Plaintiff ignored these express limitations in its SAC. For this reason alone, Plaintiff's alter ego allegations and other newly introduced factual allegations (concerning correspondence between 420 Taylor Ventures and CBRE and a draft of the Stevenson report), should be dismissed or stricken. *See* Fed. R. Civ. P. 12(f).

Plaintiff cannot distinguish the authority cited by Seven Equity establishing that when, as here, a plaintiff exceeds the permissible scope of amendment, the allegations exceeding those limitations should be stricken or dismissed. *E.g., Chandler v. Brennan,* No. CV-20-00924-PHX-DWL, 2021 WL 4503423, at *3 (D. Ariz. Oct. 1, 2021); *PB Farradyne, Inc. v. Peterson,* No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006).[7]

### C.   Seven Equity Is Not An Alter Ego Of The Leasing Defendants.

Even if Plaintiff had not transgressed the Court's limited scope of amendment, Plaintiff's alter ego theory cannot survive. As a preliminary matter, Plaintiff's contention that it is inappropriate for the Court to decide at the pleading stage whether Plaintiff has pled facts sufficient to drag an uninvolved entity into this litigation (Opp. at 17-18) is plainly inconsistent with controlling law. The Opposition relies on *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991) (Opp. at 18-19), which is a post-judgment case, and ignores that "both California state courts and federal courts have dismissed claims of alter ego liability at the pleadings stage." *Sawyer v. Bill Me Later, Inc.,* No. CV1004461SJOJCGX, 2010 WL 11492736, at *15 (C.D. Cal. Dec. 14, 2010); *see also, e.g., Greenbaum v. KC Jewelry, Inc.*, No. 216CV06845SVWJPR, 2017 WL 5496224, at *5 (C.D. Cal. Jan. 25, 2017).

Further, Plaintiff's alter ego theory suffers from an obvious legal flaw that warrants dismissal:

---

[7] Plaintiff attempts to dismiss these authorities by arguing they each dealt with new claims or claims that failed as a matter of law. As explained below, Plaintiff's alter ego claim does fail as a matter of law. Additionally, in each of these cases, the court found that the plaintiff's inclusion of new factual allegations, as Plaintiff has done here, was improper. *Chandler*, 2021 WL 4503423 at *3; *PB Farradyne*, 2006 WL 2578273 at *3. Further, both cases support that the Court need not include the words "with prejudice" when it intends to limit the scope of amendment.

Plaintiff contends it is trying to pierce the corporate veil (Opp. at 17-18), but ***Seven Equity is not behind that veil***. *See* ECF No. 1.[8] Additionally, as explained below, the alter ego doctrine is limited to cases where the proposed alter ego has some unity of ownership with the other defendant entity. No such relationship is present here.

Plaintiff equally fails to satisfy the second prong of the alter ego test, which requires it to demonstrate that an inequitable result would follow if the Court respected Seven Equity's corporate form.

### 1. The SAC Fails To Plead Unity of Ownership or Interest between Seven Equity and the Leasing Defendants.

To plead unity of ownership and interest, as is necessary for the alter ego doctrine, the plaintiff is required to allege facts showing a level of control rendering an entity the "mere instrumentality" of its alleged alter ego. *Gerritsen,* 112 F. Supp. 3d at 1043. Plaintiff fails to plead unity of interest or ownership here, as it does not, because it cannot, plead any material interest or ownership overlap between Leasing Defendants and Seven Equity. Indeed, Plaintiff is in possession of each Leasing Defendants' LLC agreement, which show ***Seven Equity has no ownership interest in any Leasing Defendant***. Plaintiff also has 420 Taylor Ventures' 2016 Operating Agreement (which, like all Leasing Defendants' operating agreements, was superseded by its LLC agreement) and every other Leasing Defendant's ***owners'*** operating agreements, which show ***Seven Equity has no ownership interest even in any of Leasing Defendants' owners***. Thus, Plaintiff ***knows*** there is no unity of ownership between Seven Equity and ***any*** of the Leasing Defendants. Yet Plaintiff asks this Court to disregard the presumption of separateness to which corporations are entitled (*Gerritsen v. Warner Bros. Entm't Inc.,* 112 F. Supp. 3d 1011, 1043 (C.D. Cal. 2015))—an "extreme remedy" (*Calvert v. Huckins*, 875 F. Supp.

---

[8] Plaintiff suggests the Court disregard the Notice of Removal in deciding the Motion. This suggestion is contrary to the law; the Court surely may consider the Notice of Removal in deciding the Motion. *See Hypower, Inc. v. SunLink Corp.*, No. 14-CV-00740-TEH, 2014 WL 1618379, at *1 (N.D. Cal. Apr. 21, 2014) ("court filings and orders are judicially noticeable because they have a direct relation to the matters at issue"); *Sheppard v. Staffmark Inv*., LLC, No. 20-CV-05443-BLF, 2021 WL 690260, at *1 (N.D. Cal. Feb. 23, 2021); *Total Benefits Plan. Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007), *aff'd,* 552 F.3d 430 (6th Cir. 2008) (on motion to dismiss, taking judicial notice of documents establishing ownership of entities); *Gordon v. APM Terminals N. Am., Inc.,* No. 17-CV-03970-MEJ, 2017 WL 3838092, at *1 (N.D. Cal. Sept. 1, 2017) (no need for judicial notice of documents that are already part of the record; such documents can be considered on motion to dismiss).

674, 678 (E.D. Cal. 1995)). Even more audaciously, Plaintiff asks this Court to create a relationship in which Seven Equity may be liable for conduct of wholly unrelated Leasing Defendants simply because *one* of the Leasing Defendants' members also is an owner of Seven Equity. Accepting Plaintiff's formulation would eviscerate the requirement of unity of ownership for alter ego liability. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (even "*[t]otal* ownership and shared management personnel are alone insufficient to establish the requisite level of control" needed to plead unity of interest and ownership) (emphasis added).

Plaintiff's whole theory hangs on the tenuous thread that Falack, one of dozens of owners of Leasing Defendants, is also the owner of Seven Equity. This *de minimis* overlap is patently insufficient to plead that the Leasing Defendants are "mere instrumentalit[ies]" of Seven Equity. *Gerritsen,* 116 F. Supp. 3d at 1138. California courts routinely have held that even an overlap of "*several* common officers and directors" is insufficient to demonstrate alter ego liability, *Phillips v. Cooper Lab'ys*, 215 Cal. App. 3d 1648, 1660 (1989) (emphasis added). Plaintiff cannot allege but a single individual in common.

Nor can Plaintiff allege unity of interest, because it cannot plead that the Leasing Defendants and Seven Equity comingle funds or disrespect the requisite corporate formalities.[9] *See Yih v. Taiwan Semiconductor Mfg. Co., Ltd.,* No. 5:20-CV-04184-EJD, 2020 WL 6290377, at *7 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom.,* No. 20-17237, 2021 WL 3783096 (9th Cir. Aug. 26, 2021). In fact, Plaintiff is in possession of documents produced in discovery that demonstrate that it was the Leasing Defendants, ***not Seven Equity***, that entered into contracts and paid invoices relating to the Premises. The SAC's dearth of allegations regarding unity of ownership among the Leasing Defendants and Seven Equity demonstrates that Plaintiff cannot satisfy this prong of the alter ego test. *See, e.g., Calvert,* 875 F. Supp. at 678.

Plaintiff points to *Covington v. Curtis*, No. SACV 12-1258 JVS, 2012 WL 13162890 (C.D. Cal. Oct. 30, 2012) (Opp. at 18-19), to support its alter ego theory. However, there, the plaintiff alleged, *inter alia*, that the alter egos were ***members*** of the single-purpose LLC – thus there was a corporate veil to

---

[9] While Plaintiff pleads "on information and belief" that the Leasing Defendants and Seven Equity did not respect corporate formalities, the Court need not accept as true allegations such as these, which are conclusory and plainly contradicted by evidence properly considered at the motion to dismiss stage (*i.e.*, the Notice of Removal). *Sprewell,* 266 F.3d at 988; *see also Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989) ("allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)" unless they "state the facts on which the[] belief is founded").

"pierce" to reach the underlying members. As noted above, this is not the case here: Plaintiff does not and cannot allege that Seven Equity is a member, parent, or subsidiary of any of the Leasing Defendants, nor that there is otherwise any corporate connection between any of the Leasing Defendants and Seven Equity. Indeed, the overwhelming weight of authority discussing alter ego liability discusses it in the context of a parent-subsidiary or shareholder-corporation relationship—neither of which is present here. *See, e.g., Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980) (parent-subsidiary relationship); *Gerritsen*, 112 F. Supp. 3d at 1042 (parent-subsidiary relationship); *United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012) (parent-subsidiary relationship); *Doney v. TRW, Inc.*, 33 Cal. App. 4th 245, 249 (1995) ("Alter ego is essentially a theory of vicarious liability under which the ***owners of a corporation*** may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages.") (emphasis added).

Plaintiff's additional citations do not change this analysis. In *Las Palmas*, among other things, the entities shared directors, and the entities were "sister corporation[s] within the [same] family of companies." 235 Cal. App. 3d 1220, 1249. Despite repeatedly citing *Las Palmas* in its Opposition, Plaintiff conveniently omits the court's holding that, "Generally, alter ego liability is ***reserved for the parent-subsidiary relationship***" or "***between sister companies***." *Id*. (emphasis added). No such relationship is present here. Instead, Plaintiff seeks an unprecedented expansion of alter ego liability to Seven Equity, despite the absence of any structural corporate relationship between Seven Equity and the Leasing Defendants.

Similarly distinguishable is *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1002 (N.D. Cal. 2001) (Opp. at 21) where, in entering a default judgment after all but one defendant failed to answer the complaint, the court upheld an alter ego theory based on allegations that, *inter alia*, the alter ego defendants owned, and served as officers and directors of, the corporate defendants, therefore permitting a finding of unity of ownership and interest. *Id.* Here, the SAC does not, and cannot, allege that Seven Equity owned or had any corporate connection or interest in any of the Leasing Defendants. Further, in *N.L.R.B. v. O'Neill*, 965 F.2d 1522 (9th Cir. 1992) (Opp. at 19), the court applied the alter ego test applicable to labor relations cases, which does not require unity of ownership and interest, and the

defendant conceded that, if he was not the alter ego of his entities, the alleged discrimination would continue. *Id.* at 1529 (applying alter ego standard from labor relations cases, including "centralized control of labor relations" and other factors irrelevant to non-labor relations cases). What is more, the entities were created specifically "to avoid collective bargaining obligations," *i.e.* with a fraudulent intent.[10] *Id.* at 1531.

Here, again, Seven Equity is not an owner of any of the Leasing Defendants, or even their parent entities, nor were Leasing Defendants undercapitalized or created for a fraudulent purpose. *See Mani Invs. v. Harouche*, No. B263486, 2016 WL 2901755, at *1 (Cal. Ct. App. May 13, 2016); *Yih,* 2020 WL 6290377 at *4. Plaintiff further has failed plausibly to plead that the Leasing Defendants and Seven Equity disregarded their corporate forms or comingled funds. And, as Seven Equity has shown (Mot. at 15-16) and Plaintiff concedes (by not disputing), Plaintiff's allegation that Seven Equity was the "borrower's sponsor" does nothing to bolster its alter ego theory.

Simply put, Falack is the sole link between Seven Equity and ***any*** of the Leasing Defendants – there is no other individual who is a member of Seven Equity and any one of the Leasing Defendants – and Falack is not an owner or member of three of the four Leasing Defendants. Moreover, Falack's status as a member of Leasing Defendant 420 Taylor Ventures, which is a party to the Lease and which signed the LOI, renders spurious Plaintiff's repeated contentions that Falack, when acting in connection with the Premises, acted for Seven Equity rather than on behalf of 420 Taylor Ventures. *See Lifecare Int'l, Inc. v. St. Jude Med., Inc.,* No. CV-98-2263CAS RNBX, 1998 WL 469868, at *2 (C.D. Cal. June 1, 1998) (rejecting plaintiff's contention that subsidiary's products, which were sold via plaintiff's contract with parent, were sold on behalf of the subsidiary). As such, the Court need not accept these conclusory allegations as true. *Sprewell,* 266 F.3d at 988. Nor are the missing legal requirements magically supplied

---

[10] Plaintiff's other citations are similarly inapposite. *See Pan Pac. Sash & Door Co. v. Greendale Park, Inc.*, 166 Cal. App. 2d 652, 654, 659 (1958) (affirming finding of alter ego liability where "[b]oth corporations had the same stockholders, directors and officers, occupied the same premises as their offices and had common employees," but finding it is insufficient to allege merely "that the corporation is . . . only influenced and governed by that [alleged alter ego]"); *McLaughlin v. L. Bloom Sons Co.*, 206 Cal. App. 2d 848, 850, 24 Cal. Rptr. 311, 312 (1962) (finding defendants alter egos, only as to collective bargaining agreement, where "[d]efendants do not challenge . . . [that] the two corporations were under the common control, and under substantially common ownership"); *Cadence Design*, 2019 WL 1768619, at *5 (alter ego liability where, *inter alia*, "tax records demonstrate that [defendant] owns 70 percent of [co-defendant]").

with perfunctory allegations that Seven Equity was the "driving force" in developing, measuring, marketing, and leasing the Premises (Opp. at 20). *See Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) (allegations that individual defendant was "conscious, active, and dominant force behind the unlawful acts" at issue in the complaint insufficient to plead alter ego liability).

Thus, Plaintiff's unity of ownership and interest allegations are insufficient, even under its own cited cases, to support its alter ego theory, and there is no reason to subject Seven Equity to defending this suit. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (Rule 9(b) exists, in part, "to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.").

### 2. Plaintiff Does Not Plead that an Inequitable Result Will Occur If Seven Equity's Corporate Form Is Respected.

Even putting aside Plaintiff's failure to plead unity of interest and ownership, the SAC's alter ego allegations still must be dismissed, because Plaintiff fails to plead facts sufficient to show that denial of alter ego liability would lead to an inequitable result. The only claimed inequitable result that supposedly may follow if the Court respects Seven Equity's corporate form is a potential challenge in collecting a hypothetical judgment. Opp. at 23. But Courts repeatedly have rejected such as an "inequitable result." *Neilson v. Union Bank of Calif., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) ("California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine").[11]

The only case Plaintiff cites to support its argument in this regard is *Talbot v. Fresno-Pac. Corp.*, 181 Cal. App. 2d 425, 427 (1960). *Talbot* is inapposite, as there, the individual defendant engaged in fraudulent transfers to avoid liability for her debts. *Id.* Here, Plaintiff does not, and cannot allege that Seven Equity engaged in fraudulent transfers or other equivalent schemes for the purpose of avoiding liability for the specific fraud alleged in the SAC. Therefore, Plaintiff cannot justify its urging this Court

---

[11] Plaintiff's assertion that *Neilson* is inapplicable because it did not involve bad faith conduct is perplexing, as *Neilson* involved a Ponzi scheme designed to defraud investors. *Id.* at 1120-21. To the extent Plaintiff is arguing that *Neilson* did not involve structuring the defendant-entities with a fraudulent purpose in mind, that allegation is equally lacking here.

to disregard Seven Equity's independent corporate form, and the SAC must be dismissed for Plaintiff's failure to plead that an inequitable result would be reached absent the imposition of alter ego liability. *See Neilson*, 290 F. Supp. 2d at 1117; *Greenbaum*, 2017 WL 5496224, at *5.

### III. <u>CONCLUSION</u>

This Court permitted Plaintiff leave to amend only "to allege more specifically that Seven Equity had a direct and independent role" in the conduct alleged in the Complaint. ECF No. 52. In each of its three stabs at a complaint, Plaintiff has tried and failed to do this. Like the failed attempts before it, the SAC – once its unsubstantiated conclusions are scrutinized – lacks any allegation that Seven Equity took any action at all related to the Plaintiff's Lease of the Premises, let alone "had a direct and independent role" in the alleged misconduct.

Further, the SAC's reassertion of the already-dismissed alter ego theory of liability against Seven Equity, and introduction of new allegations, exceeds the permissible scope of amendment. And even if, *arguendo*, this Court were to reconsider the alter ego theory, it would have to dismiss it again: Plaintiff has pleaded neither facts suggesting unity of interest or ownership between Seven Equity and the Leasing Defendants, nor facts establishing that an inequitable result would flow unless this Court disregarded Seven Equity's corporate form.

For these reasons, the Court should grant Seven Equity's Motion and dismiss the SAC with prejudice as to Seven Equity.

//
//
//
//
//
//
//
//
//
//

| | | |
|---|---|---|
| 1 | DATE: February 10, 2022 | **FOLEY & LARDNER LLP**<br>LEWIS ZIROGIANNIS |
| 2 | | JAIME DORENBAUM |
| 3 | | JASON Y. WU<br>HEATHER A. LEE |

By: */s/ Lewis Zirogiannis*

   Lewis Zirogiannis (Bar No. 321955)
    lzirogiannis@foley.com
   Jaime Dorenbaum (Bar No. 289555)
    jdorenbaum@foley.com
   Jason Wu (Bar No. 313368)
    jwu@foley.com
   Heather A. Lee (*admitted pro hac vice*)
    hlee@foley.com
   555 California Street, Suite 1700
   San Francisco, California 94104-1531
   Telephone: (415) 434-4484
   Facsimile: (415) 434-4507

*Attorneys for Defendants 420 Taylor Ventures, LLC, NT 420 Taylor Owner LLC, NH 420 Taylor Owner LLC, 420 Taylor Holdings Owner LLC, and Seven Equity Group, LLC*