# OFFICE OF THE CLERK
# UNITED STATES DISTRICT COURT
## Northern District of California

### CIVIL MINUTES

**Date:** February 24, 2022     **Time:** 1:29-2:06     **Judge:** EDWARD M. CHEN
                                       37 minutes

**Case No.**: 21-cv-03341-EMC     **Case Name:** Nextdoor, Inc. v. 420 Taylor Ventures LLC

**Attorneys for Plaintiff:** Morgan Tovey and Ryan Landis

**Attorneys for Defendant:** Lewis Zirogiannis and Heather Lee

**Deputy Clerk:** Vicky Ayala     **Court Reporter:** Ruth Ekhaus

### PROCEEDINGS

Motion to Dismiss - held

### SUMMARY

Parties stated appearances and proffered argument.

<u>Motion to Strike and Motion to Dismiss:</u>

Nextdoor sues on three counts of Fraud and Deceit, Negligent Misrepresentation, and Unilateral Mistake. Compl. at 1. Defendant Seven Equity Group ("Seven Equity") moves to dismiss for failure to state a claim upon which relief can be granted, and in the alternative, strike portions of Nextdoor's Complaint.

A.     <u>Motion to Strike</u>

As a preliminary matter, the Court **DENIES** Seven Equity's motion to strike certain paragraphs and sentences from the complaint. "[W]here leave to amend is given to cure deficiencies in certain specified claims," as was the case with Nextdoor's Second Amended Complaint ("SAC"), "courts have held that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *Ketab Corp. v. Mesriani & Assocs.*, 2:14–cv–07241–RSWL (MRW), 2015 WL 8022874, at *8 (C.D. Cal. Dec. 4, 2015). Here, Nextdoor has not asserted any new claims. Rather, it has simply inserted new facts to further support its original theories of liability against Seven Equity. Thus, the paragraphs and sentences that Seven Equity moves to strike were within the scope of the court's permitted amendment. In any event, the Court would grant leave to amend under Rule 15 given the lenient standards thereunder.

B.      Alter Ego Theory

Turning to the merits, Nextdoor seeks to hold Seven Equity liable as an alter ego of the 420 Taylor LLCs.  Compl. at 29.  Under California's alter ego doctrine, "[a] court may [] disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter 'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation.' " *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1107 (2013) (quoting *Las Palmas Associates v. Las Palmas Center Associates* 235 Cal.App.3d 1220, 1248 (1992)).  For the alter ego doctrine to be invoked "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist." *Id.; Eleanor Licensing LLC v. Classic Recreations LLC*, 21 Cal.App.5th 599, 615–17 (2018).

To plead unity of interest, plaintiff must allege facts that show the indicia of a lack of separateness.  *Aliya Medcare Fin., LLC v. Nickell*, No. CV 14-07806 MMM (EX), 2015 WL 11072180, at *21 (C.D. Cal. Sept. 25, 2015).  When assessing the level of separateness or unity between corporate entities, courts generally consider nine factors:  (1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers.  *Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.,* 99 Cal.App.4th 228, 245 (2002).  "[N]o single factor controls" a court's analysis.  *Masimo Corp. v. Wireless*, No. 19-CV-01100-BAS-NLS, 2020 WL 7260660, at *12 (S.D. Cal. Dec. 10, 2020) (citing *Virtualmagic Asia, Inc.*, 99 Cal.App.4th at 245).

Nextdoor has alleged that there is a high-level of involvement between Seven Equity and the 420 Taylor LLCs, but it has not adequately alleged that there is a complete unity of interest between them.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) (finding high-level involvement. . . only established that the defendant was "an active parent corporation involved directly in decision-making about its subsidiaries' holdings"); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) *(*noting that the unity of interest prong "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business").  Nextdoor has failed to make the requisite showing as between Seven Equity and the 420 Taylor LLCs to pierce the corporate veil for the following four reasons.

First, Nextdoor has failed to allege that there is a complete overlap of ownership between Seven Equity and the 420 Taylor LLCs.  The only allegedly shared director is Falack, who is a director for both Seven Equity and 420 Taylor Ventures LLC.  Motion to Dismiss at 21; *see Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2020 WL 7428320, at *3 (N.D. Cal. Dec. 18, 2020) (granting motion to dismiss because "[p]laintiffs' allegations about funding and a single shared [director] are insufficient to overcome the presumption of respect for the corporate form").  Nextdoor has not alleged that there is any director overlap between Seven Equity and the other three 420 Taylor LLCs.

Second, Nextdoor has not sufficiently alleged that the 420 Taylor LLCs are undercapitalized. The 420 Taylor LLCs have an ownership interest in the Premises even if it is encumbered by a mortgage, and there is no showing that the LLCs were funded by investment from their members, a typical model for real estate investments.

Third, there is no showing of intermingling of funds in disregard of the entities' interest. Though Nextdoor states that Seven Equity extracted $16,244,038 from an $88,000,000 Whole Loan held by the 420 Taylor LLCs in the form of a lucrative "Return to Equity," they do not explain how this "extraction" occurred or why it was improper. An investor-investee relationship, like a parent-subsidiary relationship, does not on its face suggest that the 420 Taylor LLCs were undercapitalized or that Seven Equity and the 420 Taylor LLCs comingled funds. *See Doe*, 248 F.3d at 928 (evidence showing that a company loans money to another is insufficient to demonstrate a unity of interest when loans are interest bearing and properly documented).

Finally, Nextdoor has not sufficiently alleged that the 420 Taylor LLCs and Seven Equity disregard corporate formalities or share corporate records. Though Nextdoor alleges that Seven Equity assists with the 420 Taylor LLCs' accounting, "monies related to the Premises were received and paid through accounts nominally *owned by the 420 Taylor LLCs*." *Id.* at 31 (emphasis added); *see Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (noting that a sharing a bank account did not show lack of segregation between corporate records when each entity had their own individual bank accounts). The fact that Seven Equity managed the 420 Taylor LLCs' accounting does not mean separate books were not maintained. There has been no showing to the contrary.

Accordingly, the Court **GRANTS** Seven Equity's motion as it pertains to Nextdoor's alter ego theory of liability. The dismissal is without prejudice should Nextdoor obtain new material evidence in discovery sufficient to change the analysis herein.

C.  Independent and Direct Basis for Liability

Nextdoor also alleges that Seven Equity played an independent and direct role in the fraud alleged in the complaint. To support this theory, Nextdoor relies on the following facts:

- Disclosures filed with the SEC state that Seven Equity "acquired the 420 Taylor property in 2016," and that Seven Equity managed the renovation of the Premises. Compl. at 7.
- Seven Equity is defined as the 420 Taylor LLCs' "borrower sponsor" on the SEC disclosures. *Id.*
- The SEC disclosures state that the 420 Taylor LLCs are indirectly controlled by Seven Equity and that Seven Equity *executed a lease with Nextdoor*. *Id.* at 52.
- Perkins + Will, the architectural firm that worked on renovating the Premises, billed Seven Equity on four separate occasions for work it had done on the Premises. Compl. at 72, 76, 80, 84.
- Between April 2018 and October 2019, Falack used his Seven Equity email address when emailing Stevenson Systems, the firm which measured the RSF of the Premises, about changing the RSF on Stevenson's measurement reports. Compl. at 98–121.
- On April 19, 2018, Stevenson Systems sent its initial Pricing Summary and Authorization form to Seven Equity. Compl. at 92.
- Stevenson emailed Falack on June 18, 2019, roughly *a year* after Stevenson began working on the Premises, asking Seven Equity to pay its outstanding balance for the work Stevenson had completed. Compl. at 130–32. Falack responded that the bill should be sent to 420 Taylor Ventures instead of Seven Equity. *Id.* This was the first time Falack indicated to Stevenson Seven Equity was not the client.
- Falack used his Seven Equity email address to discuss updating the RSF of the Premises on marketing materials with the firm that was marketing the Premises, CBRE, and Perkins + Will. Compl. at 155–62, 168–69, 170–72.
- On June 4, 2019, CBRE sent 3D renderings of the Premises to Falack. Compl. at 303–305. The cover of the renderings stated that they were "Prepared for Raymond Falack, Principal, Seven Equity Group." *Id.*
- Seven Equity is described as the buyer and owner of the Premises in several newspaper articles. Compl. at 284–88.
- Jones Lang LaSalle ("JLL"), Nextdoor's brokerage firm, described Seven Equity as the owner of the Premises in marketing materials that went out to JLL clients. Compl. at 291–92.

The Court finds that Nextdoor has alleged enough facts under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to allow a plausible inference of direct liability for the fraud alleged in the complaint – that Falack acted on behalf of Seven Equity and not just for himself or for another LLC.  Though Seven Equity presents a different interpretation of these facts—specifically that Falack was acting on 420 Taylor Venture's behalf when he communicated with third parties, and that documents sent to Seven Equity were either sent by mistake or sent in a "care of capacity"— the Court cannot consider evidence tendered by defendant in support of a factual counter-narratives at the motion to dismiss stage, and "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State*

*Warriors*, 266 F.3d 979, 988 (9th Cir.).  Accordingly, the Court **DENIES** Seven Equity's motion to dismiss as it pertains to Nextdoor's independent and direct theory of liability.